STATE of Missouri, Respondent,

v.

James Byron BROWN, Appellant.

No. 55512.

Supreme Court of Missouri,

Division No. 2.

Dec. 14, 1970.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

BARRETT, Commissioner.

A jury found James Byron Brown guilty of sodomy, he had a prior felony conviction of rape and the court therefore fixed his punishment at thirty-five years' imprisonment. RSMo 1969, § 563.230, V.A.M.S. The fact of a submissible case is not questioned and so it is sufficient for the purposes of this opinion to say that after an entry into an apartment by a ruse the defendant at gunpoint subjected Sallye, a TWA hostess, to at least two acts of sodomy. The record of his trial reveals that he was ably represented by vigilant counsel and upon this direct appeal he is represented by the Legal Aid and Defender Society of Greater Kansas City. The appeal involves a single meritorious question, raised by motion even before the trial began. Throughout, the state's evidence of his identification has been attacked and it is now claimed as it was upon trial that the identification evidence infringed due process as delimited in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. The controlling cases, however, are Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 and more recently and directly this court's opinion applying the principles of the Simmons case. State v. Parker, Mo., 458 S.W.2d 241. Specifically the problem is as stated in the leading case, insofar as constitutional problems are involved, of Simmons v. United States, whether a "pretrial identification by means of photographs was in the circumstances so unnecessarily suggestive and conducive to misidentification as to deny him due process." In essence the argument is based entirely on the fact that the offense was committed on September 21, 1965, and the defendant was not brought to trial until

December 16, 1969, more than four years later. (The reason for the delay between date of offense, indictment in April 1969, and trial in December 1969 is not fully and clearly made to appear and an explanation was excluded by the trial judge. It does appear that shortly after the offense appellant "was out of the state" and in 1969 was extradited after release from imprisonment in Nevada.)

Before trial there was a motion to suppress the state's "identification" testimony, specifically the testimony of Sallye, Margaret Tozer and Michael DeKeyser. There was a full hearing upon that motion, the defendant called and was permitted to exhaustively examine these three witnesses, as well as Patrolman Coulson. At the conclusion of that hearing the court and counsel entered upon a lengthy colloquy but finally there was a finding; "the Court does determine beyond a reasonable doubt that the identification procedure was proper, that the defendant has not been deprived of any of his rights, and that the identification was not tainted in any way." In his opening statement to the jury defendant's counsel emphasized and outlined the defense and the weakness of the state's case and in effect pointed out to the jury that the case turned wholly on "identification," originally from photographs. On the trial of the case the state called these same witnesses and others and defendant's counsel on cross-examination vigorously attacked their identification of the defendant. In background and applying the test declared in Simmons v. United States it is necessary to detail the circumstances. In the Simmons case, after stating its unwillingness to prohibit for any constitutional reasons prearrest photographic identification the court said, "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." This test was said to be in accord with the standards of Stovall v. Denno.

On September 21, 1965, Sallye, then age 22, lived with her friend, Barbara Lee, in second-floor apartment 8 at 3010 McGee in Kansas City. At 2 o'clock she was ironing and packing "to go out on a flight." She was pressed for time and when there was a knock on the door she opened it and there was "a man." He asked whether her roommate was home, said he had met her downtown a few weeks ago and wanted to talk to her. When Sallye said she wasn't there he asked if he could call her, Sallye gave him her number and told him to call her from a pay phone that she was "going out on flight." Then the man said, "Well, could I leave a note?" Sallye went to the kitchen for paper and pencil and when she returned the man had walked inside, uninvited, and closed the door. She continued with her ironing and "he stood, writing, supposedly writing the note." She went to the bedroom for some coat hangers and when she turned the man was standing in the bedroom door "with a gun in his hand." He said, "Give me your money." Sallye replied, "I don't have very much" but "gave him the ten dollars that I had in my purse." He then forced her to lie on the floor and disrobe and after blindfolding her at gunpoint assaulted her sodomically. He guided her into the bathroom and admonished her against calling the police or "he would come back and kill me."

Sallye immediately called her supervisor who lived across the street and then she called the police. Also living in the apartment was another airline hostess, Margaret Tozer. Margaret was not home but Sallye called her apartment in the almost certain knowledge that her fiance, Michael DeKeyser, (they were married when the case was tried) was there and she wanted him to come to the apartment because she was of the opinion that she had seen her assailant earlier in the day with Mike. Mike came and the police came and separately they gave police descriptions of "the man," Sallye of the man who assaulted her and Mike of the man he had shown an apart-

ment earlier in the day. Sallye went to the police station on two occasions, on the day of assault and a few days later. Sallye gave the police this description as developed on cross-examination of "a white man, and that he was approximately five foot ten, approximately 140 pounds, and that he had blondish colored hair which was wavy or curly, and that he was between the age of 24 and 27, that he needed a shave, that he was wearing a khaki raincoat, *a fisherman-type hat with a madras coloring on it.*" She said that he wore gray trousers and a blue shirt and sunglasses. As stated, she was cross-examined thoroughly and in detail and except for the color of his eyes which she could not determine even in the courtroom it does not appear that her description was in serious error and of course the jury observed his appearance as he sat in the courtroom. Mike, independently of Sallye, gave a somewhat similar description of the man he had shown through a vacant apartment earlier in the day and he mentioned a "plaid hat." In any event on her first trip to the police station Sallye looked through a large number of photographs but was unable to identify "anybody" in them. Then she looked at "lineups" but could not identify any of them and the appellant was not in any of the lineups.

But about a week later the police returned to Sallye's apartment "with five or six more pictures" and immediately she recognized Brown's picture and "told him (police officer) that this was the man." After thus testifying Sallye pointed to the defendant in the courtroom as the person in the photograph and as the man who assaulted her four years previously. DeKeyser said that as he showed the apartment he saw Sallye going into her apartment. He too was unable to identify anyone in the police lineups and the large number of photographs. But when a week or so later the police again called him to Sallye's apartment "I looked at the photographs, and withdrew one picture from—that I did identify as the person that I saw

that day, I showed the apartment." And then he too made an in-court identification of the appellant as the person in the photograph and as the person to whom he had shown the apartment. Both Mike and Sallye said that the police did not reveal the defendant's name until after their identifications. Margaret Tozer was not home during the hours of the assault or immediately after but she had seen the man to whom her fiance had shown the apartment and she mentioned "a madras hat," trench coat and sunglasses. In addition she had seen the appellant on two other occasions: first, "It was either one week or two weeks, I'm not sure on that time, but it was the same day of the week, the same time of day, about 2:00 o'clock in the afternoon and I was by myself in the apartment * * * and the doorbell rang and I wasn't answering the door, any more, so I directed the person over to the window, and there was just a screen between us, and I asked him what he wanted, and he said he was selling VFW cards." She testified, "It appeared to me to be the same man that I had seen on—that had come to our apartment before." On another occasion Margaret saw a man enter an apartment across the street, she thought she recognized the man and called the police but they were unable to locate anyone filling that description. After the police left Margaret was standing in front of the apartment house "just looking. And then a beige station wagon came along the street, very slowly, and this gentleman here stared at me as he went along very slowly in the car." The police officer who took the five or six photographs to Sallye's apartment corroborated the fact of the identifications by Sallye and DeKeyser, he said that they separately and independently picked Brown's photograph.

█ It is not necessary in these detailed circumstances to demonstrate that this record meets the tests and standards so recently established in State v. Parker, Mo., 458 S.W.2d l. c. 244. It is apparent from this record that lapse of time alone does

**554**

not establish an "impermissibly suggestive" identification within the meaning and guidelines of Simmons v. United States, unfortunately for the appellant the witnesses in his case were intelligent and observant and "in light of the totality of the surrounding circumstances" the identification procedure involved here did not infringe due process. Simmons v. United States; State v. Parker, supra.

■ There is a second point that the court erred in admitting the testimony of Cecil D. Williams, deputy circuit clerk of Jackson County in charge of records, for the reason that the "record fails to show the plea of guilty mentioned therein was voluntary" and it "contained no signature of any circuit judge of this state and was not the best evidence." It is not indicated just what the "best evidence" may have been, from Book 1002, pages 351–352 the witness identified the judgment in Jackson County in May 1961 in which James Byron Brown, appearing "in person and by attorney, Martha Hickman" entered a plea of guilty to a charge of rape and was sentenced to five years' imprisonment. Among other exhibits a certified transcript of the Department of Corrections was introduced and the court found from these files and an accompanying photograph the identity of the defendant, his imprisonment and discharge on commutation of sentence on May 29, 1964. There were other details as to appellant's prior record but it is not necessary to further encumber this record with their recitation, the particular exhibits were admissible, (Garrett v. State, Mo., 459 S.W.2d 378; State v. Worsham, Mo., 416 S.W.2d 940), they were received by the court in a separate hearing on the allegation of his prior felony record and the proof and finding by the court meet the requirements recently established in State v. Blackwell, Mo., 459 S.W.2d 268 and State v. Ellifrits, Mo., 459 S.W.2d 293.

Accordingly the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.