**STATE of Missouri, Respondent,**

v.

**Milton BROOKINS, Appellant.**

**No. 55650.**

Supreme Court of Missouri,
Division No. 2.

May 10, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied June 14, 1971.

John C. Danforth, Atty. Gen., Kermit W. Almstedt, Asst. Atty. Gen., Jefferson City, for respondent.

Daniel P. Reardon, Jr., St. Louis, for appellant.

STOCKARD, Commissioner.

Milton Brookins was found guilty by a jury of robbery in first degree by means of a dangerous and deadly weapon, and he was sentenced to imprisonment for a term of sixty years.

The sufficiency of the evidence to sustain the conviction is not challenged. Therefore, we shall set forth but a brief summary of the facts.

On June 22, 1969, at about 3:30 o'clock in the afternoon, defendant knocked on the door of the apartment of Miss Connie Rosenbaum, and when she opened the door he forced his way into the apartment by the use of a gun. After warning Miss Rosenbaum and Miss Rene Flanders, a visitor at the apartment, not to say anything or he would shoot them, he demanded and received $24 from Miss Rosenbaum. Then, with a knife as well as the gun in his hand, he ordered the two girls to go to the bedroom where he committed sexual indignities on each. During a scuffle with Miss Rosenbaum, he struck her repeatedly

on the head with the gun and then shot her in the face.

Defendant's first contention on this appeal is that the trial court erred in refusing his request for a continuance because "a fair and impartial trial was impossible" by reason of "highly inflammatory publicity." Reference must be made to reports and stories by the news media which were released both before and after defendant was arrested for the robbery of Miss Rosenbaum.

Defendant was indicted on July 15, 1969, arraigned on July 17, and the date for trial was set for September 4. At defendant's request a continuance was granted, and the case was reset for trial on November 17, 1969. On that date defendant requested another continuance, and alleged that as an outgrowth of wide and extensive publicity by the news media concerning the alleged crimes committed by him, it would not be possible to obtain a fair trial.

In support of his request for a continuance defendant submitted three newspaper articles published in the St. Louis Post Dispatch on February 2, March 5 and March 8 of 1969. The articles pertained to sexual attacks by an unidentified colored man upon five white women, and in the article of March 8 the term "phantom rapist" was used to refer to the assailant. Defendant also submitted two articles appearing in the same newspaper on April 18 and April 25, 1969. In the first of these articles it was reported that twenty victims of the "phantom rapist" were to view a possible suspect, and in the second article it was reported that two additional women had been raped. In none of these articles was defendant's name used.

On May 21, 1969, the Post Dispatch carried an article in which it reported that defendant had been arrested and charged with forcible rape and theft, and that four victims had identified him as their assailant. Two radio stations and two television stations related substantially the same account on their news broadcasts, and at least one of the television announcers referred to defendant as the "phantom rapist."

On May 23, the news media again carried reports that defendant had been identified by three more women as their assailant, and by a pawnbroker as the one who had pawned some articles which had been stolen from a rape victim. In some of the reports reference was made to defendant as the "phantom rapist." On June 6, the Post Dispatch reported that the arrest of defendant had led to the release of another person previously suspected as the "so-called phantom rapist." Two days later the Globe Democrat reported that defendant, who was "suspected of being the 'phantom' rapist" had been released on bail, and the newspaper carried an editorial which questioned police and court procedure whereby defendant was released. On June 18 both newspapers carried an article in which it was reported that defendant had been indicted on two counts of rape and theft, and in each he was referred to as "suspected of being the 'phantom' rapist."

On June 30, 1969, the newspapers reported that defendant had been arrested for the assault and robbery of Miss Rosenbaum, and similar stories appeared in the news broadcasts over the radio and television stations. These broadcasts made reference to defendant as the "phantom rapist," and the television stations showed his picture. On the following days the news media carried reports that defendant was to be arraigned, and that bond was not to be allowed. On July 1 and 8 the Globe Democrat carried editorial reports concerning defendant's activities, and the propriety of permitting a person accused of a heinous crime to be freed on bond. When defendant was indicted the news media made reference to that occurrence. In all, defendant presented 85 exhibits of reports by the news media concerning his activities, his arrest, and the charges against him.

At the conclusion of the hearing on the motion for a continuance, the trial court

denied the continuance and noted that the publicity given to defendant began in May 1969 and continued until about July 9, 1969, but thereafter "there has been no publicity of any significance attributed to this defendant." The case was then assigned to Division 18 of the Circuit Court for the City of St. Louis for trial.

A motion to suppress evidence was subsequently filed, and during a hearing on that motion defendant filed an additional request for a continuance based on publicity by news media occurring on November 17 and 19, 1969. In the request the defendant asked the "court to continue the pending cause and reset the matter for trial in this Division on December 15, 1969." The trial court invited representatives of the news media to appear in court, and it read to those present a statement of policy declared by "The Missouri Advisory Committee on Free Press-Fair Trial." The court then granted the request for a continuance to December 15, 1969. On that day, without further request for a continuance, the court started empaneling the jury. After the peremptory challenges were made and the jury had been selected, but before the jury was sworn, counsel for defendant renewed his request for a continuance, and asked that the evidence taken in the assignment division be incorporated in the trial record in support thereof. He commented that "a number of jurors * * * indicated a knowledge of these proceedings," and that when "you combine one with the other—the knowledge of the proceedings and the nature and extent of the publicity—it makes the trial of the defendant on a single charge impossible, for the simple reason that the news items contained the allegations of any number of offenses."

■ The trial court has wide discretion in determining whether an accused is entitled to a continuance on the ground that pretrial publicity concerning the case or the accused has been such to prevent a fair and impartial trial. State v. Golden, 353 Mo. 585, 183 S.W.2d 109, certiorari denied, 324 U.S. 874, 65 S.Ct. 1013, 89 L.Ed. 1427; Finnegan v. United States, 8 Cir., 204 F.2d 105, certiorari denied, 346 U.S. 821, 74 S. Ct. 36, 98 L.Ed. 347. The trial court is in a much better position to determine the propriety of a postponement because of publicity than an appellate court, and therefore "it requires a very strong showing to induce the higher court to interfere." State v. Golden, supra. In State v. Spica, Mo., 389 S.W.2d 35, 41, this court quoted with approval from 22A C.J.S. Criminal Law § 497, as follows: "'As a general rule, and in the absence of extraordinary or unusual circumstances, public excitement or prejudice is not of itself a sufficient cause for the continuance of a criminal case, at least where such excitement or prejudice is not such as to prevent a fair and impartial trial. The mere fact that there has been widespread adverse pretrial publicity about accused does not, by itself, establish the reasonable probability that accused cannot obtain a fair and impartial jury at the trial so as to entitle him to a continuance. In the vast majority of such cases the proper procedure is not to postpone the trial, but to proceed to trial and to determine on the voir dire of the panel and the individual talesmen whether a fair and impartial jury can be selected.'" See also, United States v. Connelly, D.C., 129 F.Supp. 786. That was the procedure followed in this case, and based on what happened at the voir dire the trial court concluded that a further continuance was not justified.

Two other matters deserve comment. As noted, the trial court granted a continuance to December 15, 1969, the date requested by the defendant. Nothing of any particular consequence is shown to have happened after defendant suggested that date, and he is not entitled to complain on appeal that the court did not continue the case beyond the date proposed by him. Also, "where a defendant contends that his conviction should be overruled on the ground that it was error to deny him a continuance, it has been held that such a contention must be rejected if the defend-

ant does not show that the jurors who tried the case were actually influenced or prejudiced by the pretrial publicity of which he complains." Annotation, 10 L. Ed.2d at p. 1291. Defendant does not contend that any juror who heard the case should have been excused, or that a challenge against any juror was erroneously overruled.

■ When we consider the total circumstances of this case, including the lapse of time, the commendable precautions taken by the trial court, that the trial was started at the time suggested by defendant, and that he makes no challenge to any juror, we are constrained to conclude that there was no abuse of discretion by the trial court in not granting a continuance after the jury had been empaneled.

■ Defendant next contends that the trial court erred in permitting the prosecutor to exclude all Negroes from the jury panel by use of peremptory challenges. He asserts that in State v. Davison, Mo., 457 S.W.2d 674, this court has set a formidable, if not impossible, burden of proof when it was held that there is a presumption that the prosecutor is using the peremptory challenges of the state to obtain a fair and impartial jury, and that an accused may complain only if there is proof that in case after case the practice has resulted in actual discrimination. The result of the Davison case was based to a considerable degree on Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, and defendant has not presented any persuasive argument why the rule of the Davison case should be changed, or why the factual situation of this case does not fall within its rule. We find no merit to this contention.

■ Defendant's last point is that the trial court erred in overruling his motion to suppress all evidence of eyewitness identification.

Evidence adduced at the hearing on the motion to suppress was to the effect that Miss Rosenbaum, Miss Flanders, and a Mrs. Nancy Tresslar, who had seen defendant in the hallway of the apartment building where Miss Rosenbaum lived, were each separately shown five photographs (referred to as "mug shots"), four of which were of persons similar in appearance to defendant, and the fifth being of defendant. There is no evidence, nor is there a claim, that the officer who showed the photographs made any suggestive statement to the person to whom they were shown. Miss Rosenbaum and Miss Flanders each selected the photograph of defendant as the assailant, and Mrs. Tresslar selected the photograph of defendant as the person she saw in the hallway. Subsequently, each person identified the defendant in a lineup at which defendant's counsel either did or had an opportunity to attend, and there is no challenge on this appeal to the lineup procedure.

In his brief, defendant asserts that he "does not claim that the totality of the circumstances surrounding his identification were so suggestive as to be violative of his constitutional rights, but rather claims that the post-arrest identification session was a 'critical stage' in the prosecution and therefore he was entitled to legal representation at such identification."

At the time the three witnesses viewed the photographs, defendant had been arrested and taken into custody. The basis for his arrest was an identification of the automobile he was driving. Therefore, the police had good reason to believe that it was possible that they could have the wrong person. As pointed out in State v. Hamblin, Mo., 448 S.W.2d 603, 611, early verification by such means as possible is in the interest of society so that a determination can be made that the person apprehended is the felon, so if not, the real felon can be apprehended before he effects his escape. Defendant simply disagrees with the method followed by the police while admitting that the totality of the circumstances surrounding the use of the photographs was not violative of any federally protected right. He argues that we should

adopt "a per se exclusionary rule" and prohibit any in-court identification by a witness who, even though no improper suggestive procedure was used, has identified a photograph of the accused in the absence of his counsel after he has been taken into custody. This we decline to do.

As pointed out in State v. Walters, Mo., 457 S.W.2d 817, United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, apply only to post-indictment situations. In this case the viewing of the photographs occurred before defendant was indicted or charged with the robbery of Miss Rosenbaum or of any other offense which arose out of the related events. The viewing of the photographs was not a "critical stage" within the scope of either the Wade or Gilbert cases, United States v. Conway, 3 Cir., 415 F.2d 158, and we decline to so extend it. When it is not a "critical stage" this case is to be determined by the rule announced in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. It was there held that the photograph identification may be found to be improper only if it was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See State v. Brown, Mo., 460 S.W.2d 551; State v. Boswell, Mo., 433 S.W.2d 556; State v. Parker, Mo., 458 S.W.2d 241. However, defendant makes no such claim, and the record would not support such a claim if made.

Defendant relies primarily on United States v. Zeiler, 3 Cir., 427 F.2d 1305, which so far as we can determine stands alone in imposing the requirement that photographic identification is impermissible in the absence of counsel for the accused. The facts of that case seem to us to have been properly subject to the rule announced in the Simmons case, and there was no occasion for the far-reaching pronouncement there made. In any event, we decline to follow the Zeiler case, but instead we consider the proper rule to be

that announced in United States v. Bennett, 2 Cir., 409 F.2d 888, certiorari denied (captioned Haywood v. United States), 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101. After discussing the Simmons, Wade, and Gilbert cases, and the scope of the Sixth Amendment, the court quoted from the Simmons case as follows: " 'Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement.' " The court then concluded as follows: "And in *Wade* itself, the Court listed as one of the ways the prosecution might attempt to show that a witness' identification of defendant at trial was not the fruit of a lineup held in absence of counsel a showing of 'the identification by picture of the defendant prior to the lineup,' * * * which clearly implies that such identifications are permissible even when defendant's counsel is not present." Other cases which follow the rule of the Bennett case include United States v. Sanchez, 2 Cir., 422 F.2d 1198; United States v. Smith, 9 Cir., 423 F.2d 1290; United States v. Roth, 2 Cir., 430 F.2d 1137; United States v. Ballard, 5 Cir., 423 F.2d 127; United States v. Canty, 4 Cir., 430 F.2d 1332, and United States v. Conway, 3 Cir., 415 F.2d 158.

The trial court correctly overruled the motion to suppress the testimony of identification for any reason now advanced.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

**48**

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.