362 So.2d 1071 (1978)
STATE of Louisiana
v.
Terry L. KELLY.
No. 60914.
Supreme Court of Louisiana.
September 5, 1978.
Rehearing Denied October 5, 1978.
*1073 Horace P. Rowley, III, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
On August 12, 1976 the Orleans Parish Grand Jury returned an indictment charging that on August 1, 1976 Terry L. Kelly committed second-degree murder of Josephine Gregory. La.Rev.Stat. 14:30.1. Defendant Kelly was tried, convicted and sentenced to life imprisonment, without eligibility for parole, probation or suspension of sentence for forty years. The following assignments of error are urged on this appeal.[1]
Assignment 1: Defendant, as an indigent, applied for counsel and the trial judge appointed counsel on August 23,1976. This appointment was vacated on August 27, 1976 and Jerry D. Williamson, Esquire, was appointed to represent the defendant. Appointed counsel thereafter filed a number of pretrial motions on behalf of defendant. After hearings on these motions in which defense counsel was partially successful, the case was tried before a jury on January 5 and 6, 1977, resulting in a verdict of guilty as charged. Defendant was sentenced on January 21, 1977, at which time a motion for appeal was filed. The transcript of the trial proceedings was completed on June 2, 1977. Shortly thereafter, on July 8, 1977, the trial judge vacated the appointment of trial counsel Williamson and appointed William J. O'Hara III, Esquire, and the Loyola Law School Clinic to represent defendant in all further proceedings.
On August 9, 1977 a student practitioner with the law school clinic filed assignments of errors alleging that the trial judge improperly denied the defense motions to suppress evidence and to suppress identification. In addition it was alleged that the trial judge erred in permitting the jury to view the State's exhibits 3, 6, 7, 8, 10, 28 and 31. A designation of those portions of the record applicable to these assignments of error was also filed at the same time. Thereafter, on October 27, 1977, the appeal was lodged in this Court.
Then, on November 3, 1977 the trial judge vacated the appointment of William J. O'Hara III, Esquire, and the Loyola Law School Clinic, and substituted Horace P. *1074 Rowley III, Esquire, as counsel for defendant. On November 14, 1977 Rowley filed a motion in the trial court to supplement the record in order to include a transcription of the voir dire examination of prospective witnesses, closing arguments of counsel, the instructions to the jury and the sentencing proceedings. In conjunction with this motion defense counsel filed an amended designation of the record which had the effect of requiring all portions of the record not transcribed and filed to be lodged in this Court with those portions of the record already filed.
In denying this motion the trial judge was of the opinion that a perusal of the stenographic notes disclosed that no objections were made to any ruling in the proceedings which defendant requested transcribed. The practice in his court was to transcribe for appellate purposes only the objections of counsel and applicable testimony and/or relevant colloquy of the proceeding. In his view, to produce frivolous transcripts would cause a backlog in his court where the volume of appeals was great.
From this ruling, defense counsel sought review in this Court where the motion was denied on December 22, 1977. This Court was of the opinion that the showing made did not warrant the granting of the motion "at that time". Defense and State briefs were filed thereafter, and when the case came for hearing on oral argument the motion to supplement the record was granted, allowing time for supplemental briefs and permitting the defense to prepare new assignments of error.
The argument made in support of this first assignment of error is that the student practitioner was without authority to file assignments of error or designate the record required on appeal, unless the document was also signed by a supervising attorney admitted to the practice of law.
Rule XX of this Court's Rules permits limited participation of eligible law students in trial court activities when the programs are sponsored and supervised by the law school. Section 6 of this Rule permits "Preparation of briefs, abstracts and other documents to be filed in appellate courts of this state," by eligible law students, "but such documents must be signed by the supervising lawyer."
While it is obvious that there was a lack of compliance with the Rule and that the assignments of error and designation of the record, signed only by the student practitioner, were improperly filed in this case, the irregularity has been fully corrected. Defense counsel on this appeal, who was not present at the trial, has been furnished with a complete record. He has reviewed this record and prepared assignments of error which he considers worthy of consideration on appeal. We accept these assignments as controlling on this appeal.
Assignment 2: About seven o'clock on the evening of August 1, 1976, Josephine Gregory, the 69-year-old victim in this case, was brutally stabbed thirteen times with a butcher knife. Neighbors heard her screams for help as she staggered to her front porch where she slumped on a couch and died.
Two of her neighbors Richard and Sheila Keller testified they saw defendant Kelly enter the victim's house shortly before the incident. They saw him leave through the front door and saw the victim stagger onto the front porch thereafter. They supplied the police with a description of Kelly and pointed out the direction he took in leaving the scene. Julie Watts was leaving a friend's house across the street as defendant walked away from the victim's house. She testified that, although she did not see his face, she saw defendant leave the scene of the crime and was able to give the police a description of his clothing. A search of the area followed.
Within minutes the police arrested the defendant a few blocks from the scene of the crime. His clothes and build matched the descriptions the police had obtained from the witnesses. At the time, defendant had removed his bloodstained shirt and was washing it with a hose. Blood was also present under his fingernails and shoes. *1075 There were scratches on his face. The police advised defendant that he was under investigation for attempted murder, and his Miranda rights were recited after he was handcuffed and placed in the police car.
The police drove defendant back to the scene of the crime where he was immediately identified by the three witnesses. He was then driven to the central lockup where he was booked for murder.
The principal question posed by this assignment is whether the trial judge erred by admitting testimony of the identification at the scene of the crime.
A motion to suppress identification consisted of a conclusory allegation that the in-field identification of defendant was suggestive, and the further allegation that the identification was inadmissible because defendant was not then represented by counsel. At the hearing on this motion the arresting officer testified that when he returned to the scene with the defendant, Richard and Sheila Keller and Julie Watts were brought to the police car one at a time, where defendant sat handcuffed. About three other suspects of similar descriptions were lined up outside the police cars. Richard Keller was asked if he recognized any of these suspects and replied that he did not. He was then asked if the individual in the police car was the person he saw go into and leave the victim's house. Keller identified the defendant positively as the individual he saw. Later Keller was driven to the police station to give a statement. While there he was shown a photograph and said he recognized it as a photograph of the defendant. When asked if any suggestions were made in an attempt to influence his identification, he said no such attempt was made. He further testified that he had seen defendant on numerous occasions in the past and that defendant had been a neighbor of his prior to this offense.
Sheila Keller followed the same routine, except when she went to the car she identified defendant without being asked if any of the other suspects could be identified as the person she saw enter and leave the house. She too had known the defendant prior to this offense when he lived with his cousin in a house to the rear of the Keller house.
When Julie Watts was brought to the car she was asked if she recognized the pants worn by defendant to be those worn by the individual who left the scene of the killing. She recognized the pants to be the same. She also recognized the shirt then in the possession of the police as the shirt worn by the person she saw leaving the scene of the crime.
On this evidence the trial judge denied the motion to suppress identification.
A one-on-one in-field identification is permissible where it is closely associated in point of time with the criminal transaction and where the accused is returned to the scene of the crime for an on-the-spot identification. Prompt confrontations promote fairness by assuring reliability and the expeditious release of innocent suspects. State v. Collins, 350 So.2d 590 (La.1977); State v. Maduell, 326 So.2d 820 (La.1976).
No indication of impermissible suggestion or the exertion of undue influence to compel an identification appears in this record. To the contrary, the in-field identifications were made within minutes after the killing. The Kellers, as identifying witnesses, had ample opportunity to view and recognize the defendant. Although Julie Watts only saw defendant's back as he walked away from the scene of the crime, his distinctive clothing enabled her to positively identify his clothing when he was returned to the scene.
In-court identifications by the Kellers also had a source independent of the in-field identification. Hence that in-court identification was admissible even if the in-field identification had been impermissibly suggestive. Each of them had seen defendant on numerous occasions while he lived as their neighbor for several months prior to August 1,1976. On some occasions during that time defendant stopped and talked to Sheila Keller while she was chatting with the victim on her porch.
*1076 On many occasions this court has held that a person accused of a crime is not entitled to counsel at a lineup prior to indictment. See State v. Fields, 342 So.2d 624 (La.1977) and cases cited there. The allegation of the motion to suppress identification, that defendant was not represented by counsel at the in-field lineup, is therefore without merit.
This assignment has no merit.
Assignment 3: In brief defense counsel asserts that at the trial the clerk improperly called prospective jurors in the order in which their names appeared on the petit jury venire sheet compiled by the jury commission. To support this assertion counsel refers to the jury list in the record containing names of the jurors and check marks in columns. No explanation of this list is furnished. While this evidence does not preponderately support counsel's claim, the record was supplemented with a transcript of the voir dire. By this transcript counsel's factual assertion is verified.
The case of State v. Hoffman, 345 So.2d 1 (La.1977), recognizes that a majority of the judges of the Criminal District Court for the parish of Orleans selected prospective jurors for voir dire examination in the order in which they appeared on the petit jury venire sheet. In the Hoffman case this practice was held to be contrary to Article 784 of the Code of Criminal Procedure in effect at the time. When the instant case was tried in January 1977 that article required that "In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court." However, the Hoffman decision, rendered on April 26, 1977, interpreting the same provision, determined that the interests of the administration of justice would best be served by giving that decision prospective application only, confining its effect to those cases wherein a jury panel is selected after finality of that opinion. Cases already submitted to this Court for decision were also to be controlled by the Hoffman decision. In effect the Hoffman decision approved the practice of calling prospective jurors in the order in which their names appeared on the petit jury venire list in cases where the jury was selected prior to April 26, 1977, condemning the practice in subsequent cases only.
Selection of the jury panel in the instant case occurred on January 5, 1977, more than three months before the April 26, 1977 decision in Hoffman. The instant case was not filed in this Court until October 27, 1977; it had not, therefore, already been submitted to this Court for decision at the time of the Hoffman decision.
This assignment is without merit.
Assignment 4: At the trial the prosecution exercised all twelve peremptory challenges, ten challenges were against black and two were against white jurors. Although no objection was made to these peremptory challenges at the time, the defense contends that it was error for the trial judge to permit them.
Permitting peremptory challenges of a racial group as in this instance, it is contended, amounts to invidious discrimination and a denial of the accused's constitutional right to a trial by an impartial jury representing a cross section of the community.
Aside from the fact that no objection was made at the trial to the State's exercise of its peremptory challenges, La. Code Crim.Pro. art. 841, no attempt was made to introduce evidence to show any historical pattern of exclusion of black jurors in this district or in this division of court. There is, therefore, no merit to this assignment.
Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), announced the proposition that absent a showing of purposeful discrimination by a historical pattern of exclusion of an identifiable class, the courts will not inquire into the motive of the State in exercising its peremptory challenges in a particular case. Thus, the mere circumstance that the State has used its peremptory challenges to strike qualified members of the defendant's race does not constitute a denial of equal protection.
*1077 According to the defense argument, by implication the decision in Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), modified the rule of Swain v. Alabama in cases where the prosecution has peremptorily challenged a large percentage of a racial group. In that situation, it is contended, the Taylor case places the burden upon the prosecution to prove that its official acts were not the result of unconstitutional racial discrimination. The argument is not well-founded.
On a number of occasions since the decision in Taylor v. Louisiana, this Court has reaffirmed and applied the rule of Swain v. Alabama. State v. Bias, 354 So.2d 1330 (La.1978); State v. Rhodes, 351 So.2d 103 (La.1977); State v. Bennett, 341 So.2d 847 (La.1977); State v. Haynes, 339 So.2d 328 (La.1976); State v. Reed, 324 So.2d 373 (La.1975). In our view the decision in Taylor v. Louisiana does not modify the rule of Swain v. Alabama, as defendant contends. Swain v. Alabama is applicable to the case at bar.
Assignments 5, 6 and 7: In order to avoid the testimony of a medical expert relative to the cause of the victim's death, defense counsel offered to stipulate to the cause of death. The State rejected the offer, and the doctor's testimony was received. Thereafter, five photographs were introduced by the State over defense objection. It is contended that because defendants offered to stipulate to the cause of death the photographs introduced for that purpose were gruesome and served only to inflame the jury to the prejudice of the defendant.
One of the photographs depicts the face of the victim showing bruises and lacerations. Another depicts the victim's bruised hand. A bed splattered with blood is shown in a third. These photographs are not gruesome and are incapable of inflaming the emotions of an observer to any appreciable extent. The bruises and lacerations on the face and hands of the victim are not major wounds, and the blood on the bed appears only as a black spot in that black and white photograph.
The two remaining photographs, however, are gruesome. One is of the upper torso of the victim showing at least six knife wounds while the other is a photograph of the victim as she lay dead on a couch on her porch after succumbing to the knife wounds. Her clothes and legs contain large blood stains. Although he recognized that these photographs are gruesome, the trial judge admitted them into evidence on the ground that their probative value outweighed their prejudicial effect. The photographs were properly admitted.
As a general rule determining the proper use of photographs at trial is largely within the sound discretion of the trial judge who can decide best whether they serve a proper place in the jury's enlightenment. His ruling in this respect will not be disturbed in the absence of an abuse of discretion. State v. Sawyer, 350 So.2d 611 (La.1977); State v. Barber, 271 So.2d 853 (La.1973); State v. Giles, 253 La. 533, 218 So.2d 585 (1969).
Where they are otherwise properly admitted, it is not a valid objection to the admissibility of photographs that they tend to prejudice the jury. Competent and material evidence should not be excluded merely because it may have a tendency to cause an influence beyond the strict limits for which it is admissible. State v. Johnson, 198 La. 195, 3 So.2d 556 (1941). On this principle this Court has held that photographs, even if gory, are admissible if they shed light on any issue. State v. Frezal, 278 So.2d 64 (La.1973); State v. Hamilton, 249 La. 392, 187 So.2d 417 (1966); State v. Scott, 198 La. 162, 3 So.2d 545 (1941).
The ultimate test to be applied before a gruesome photograph can be admitted into evidence is whether the probative value of the photograph outweighs its probable inflammatory effect. The evidence, of course, must also be relevant for some purpose. And a balance must be struck between the photographs's probative value and its tendency to overwhelm reason and to associate the accused with the atrocity without sufficient evidence. State v. Smith, 327 So.2d 355 (La.1976).
*1078 These photographs helped to establish the cause of death, the extent of the struggle, and the amount of blood the wounded victim lost. Because of this the photographs linked the defendant and his bloodstained clothing to the victim's struggle and death. These two photographs, therefore, had probative value, which, when considered with the other evidence in the case, outweighed their inflammatory effect. There were no eyewitnesses to the actual killing; and the burden of proof, imposed upon the State to prove the killing beyond a reasonable doubt by circumstantial evidence, required a showing that that defendant was involved in the killing by facts other than his entry into and departure from the victim's house. These photographs were part of the tangible circumstantial evidence which supplied that connection. They were essential to the State's case.
The defense argument that reference to these photographs in the prosecutor's closing argument compounded their inflammatory effect is not properly before this Court. No objection was made to the State's closing argument at the trial. La. Rev.Stat. art. 841.
Assignment 7: A report of the victim's blood type was prepared by a medical technologist who did not testify. However, the medical doctor who did testify identified the signature on the report to be that of the technologist. No objection was made to the doctor's testimony concerning the report. When the report was later introduced in evidence, defense counsel stated there was no objection to its introduction. The defense argument that it was improperly admitted is therefore without merit.
Assignments 8 and 9: Prior to trial defendant moved that the court order the prosecution to furnish to him in advance of trial a copy of all information, data and computer printouts pertaining to the prior voting record of each and every prospective juror. The trial judge denied this motion.
At the voir dire examination, defense counsel asserts in brief, that he was denied the right to examine prospective jurors relative to their previous voting record in the trial of cases. There is, however, no clear showing that such a right was denied or, if it was, that an objection was made to such a ruling.
There is no constitutional or statutory law which specifically requires the State to disclose the contents of these voting lists. The defendant may obtain the same information by voir dire examination of the prospective jurors. State v. Holmes, 347 So.2d 221 (La.1977); State v. Singleton, 352 So.2d 191 (La.1977). Here defendant's failure to establish that he was deprived of the right to inquire on voir dire into the voting record of prospective jurors, and his failure to object to the alleged deprivation, indicates there was no undue limitation of the right to full voir dire examination. These assignments are therefore without merit.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs and assigns reasons.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs and assigns reasons.
TATE, Justice, concurring.
I have reservations concerning our treatment of certain of the assignments, which pose potentially serious and reversible issues. The possible or actual errors to which I refer are raised by the following assignments (as re-numbered by our majority opinion):
Assignments 5, 6, and 7 relate to the introduction of gruesome photographs. (The trial court commendably excluded others.) The sole objection at the trial was that they were gruesome and repetitive. The defendant points out also an apparent misuse of one of them in an inflammatory manner during the prosecutor's rebuttal argument (to which no objection was made, however).
While I ultimately concur with the majority's rejection of these assignments, I note the argument raised by brief: that the defendant *1079 had offered to stipulate the cause of death. Under State v. Gilmore, 332 So.2d 789 (La.1976), if offered, this stipulation should have been accepted by the trial court as a means to prove the fact at issue (the death by beating and stab wounds, already proved by the coroner's testimony), without injecting into the jury trial the extraneous prejudice resulting by gruesome photographs ostensibly introduced only as probative of the death by beating and stab wounds.
However, the stipulation was offered early in the trial. It was offered only to avoid the minute detail of the coroner's testimony as to the wounds. It was not offered in connection with (and in lieu of) the photographs later offered in the trial.
The Gilmore reason for the objection to the photographs, if intended, was not made with sufficient specificity to bring home to the trial judge the ground of the objection now relied upon on appeal. La.C.Cr.P. art. 841. Had this ground been urged, the trial judge (who conscientiously excluded many of the photographic exhibits offered) may well have found merit to it.
Assignments 8 and 9: These relate to the trial court's denial of the defendant's request that the prosecutor furnish him the prior-jury voting records of the prospective jurors before the trial, while at the same time denying the accused the right to examine these prospective jurors at voir dire as to his issue. Under State v. Holmes, 347 So.2d 221 (La.1977), the prosecutor is not obliged to furnish such information (a ruling to which I dissented) because defense counsel may examine prospective jurors concerning this matter. It seems to me that error occurred in the denial of voir dire examination, even if not (as I myself believe) in the denial of the pretrial motion. Nevertheless, I am not inclined to feel, at least in view of the present uncertainty of the jurisprudence, that the error reaches reversible dimensions.
Accordingly, with these reservations, I concur.
CALOGERO, Justice, concurring.
I concur in the majority's determination that the assignments relating to the introduction of photographic evidence lack merit, especially in view of my opinion that the two photographs recognized by the majority and the trial judge as gruesome actually are not that at all. Even in cases where I would concede the gruesome character of photographic evidence tendered by the State in a criminal trial, appreciation of the substantial burden of proof the prosecution bears would prompt my consideration of legitimate purposes served by the introduction of such photographs other than those hastily stated in the course of trial, in response to defense objection. Even as it fashioned the rule articulated in State v. Gilmore, 332 So.2d 789 (La.1976) discussed in the concurrence of my brother Tate, this Court recognized that a defendant may not, by means of a unilateral stipulation, rob the State's evidence of its fair weight or deprive the prosecution's evidence of its legitimate moral force.
DENNIS, Justice, concurring.
I concur in the decision of the Court but disagree with the majority opinion's manner of resolving Assignment of Error Number 4 primarily by following Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).
In the Swain case, the defendant, a nineteen-year-old Negro charged with the rape of a seventeen-year-old white girl, was convicted by an all-white jury in Talledega County, Alabama, and sentenced to death. Although the county's population was 26% black, and ten to fifteen percent of the jury venires were black, no Negro had actually served on a petit jury for fifteen years. The absence of blacks from trial juries was attributable to the operation of the Alabama struck jury system, a variant of the peremptory challenge system, in which veniremen remaining after excuses, exemptions, and removals for cause are "struck" the defense striking two and the prosecutor striking one alternatively until only twelve jurors are left. In the Swain case there were eight blacks on the venire; two were *1080 exempt, and the prosecution struck the rest. Swain contended that he had been denied equal protection of the laws by racially discriminatory selection of the jury venire and the petit jury. Swain argued that discrimination was accomplished by use of the State's peremptory strikes in the particular case to remove all black veniremen; and by use of the peremptory strike system through the years in a scheme to exclude all blacks.
The Supreme Court rejected Swain's contentions and affirmed the judgment of conviction. 380 U.S. 202, 227, 85 S.Ct. 824, 839, 13 L.Ed.2d 759, 777 (1965). As we read the opinion of the Court, although it is subject to differing interpretations, the decision was based on several interrelated reasons. The underlying rationale appears to be that the equal protection clause of the Fourteenth Amendment does not prohibit a state prosecutor from peremptorily challenging a venireman because of his race if the fact of his race in that particular case would lead in good faith to the conclusion that the juror is likely to be partial. In order to protect the efficacy of the peremptory challenge, and to prevent the disruption of trials by defendants' continual charges of prosecutorial abuse, the Court created a presumption that in any particular case the prosecutor has invoked the State's peremptories because of good faith trial-related considerations. The presumption is not destroyed by the mere fact that in the case at hand all blacks were removed from the jury. Perhaps the defendant by proof of a State's systematic striking over a period of time of blacks in the selection of petit juries, or by eliciting an admission from the prosecutor that discrimination accounted for his rejection of blacks, may raise a prima facie case under the Fourteenth Amendment.[1] However, the Court found it unnecessary to decide this last question because it thought that the record in the case was not sufficient to demonstrate systematic exclusion.
The opinion of the Court in Swain v. Alabama has been critically assayed from a number of standpoints.[2] The most fundamental objection is that the Court, by placing the State's peremptory challenge beyond realistic scrutiny, converted the challenge from a device for protecting defendants into a tool for restricting the availability of the defendant's constitutional right to equal protection of the law in jury selection.[3] The State's use of peremptory challenges to totally exclude blacks from petit juries would seem to present a classic prima facie case of racial discrimination. The majority opinion in Swain, however, refused to acknowledge the natural inference to be drawn from these facts, and instead saddled the defendant with an impossible burden.[4]
The Swain decision has also been criticized for its questionable historical analysis of the nature and purpose of the peremptory challenge, from which the Court inferred that the prosecutor's use of the challenge *1081 should be given the same protection as it receives in the defendant's hands.[5] This view is not only historically suspect, but it also ignores constitutional rights of the accused which could be imperiled by the State's use of peremptory challenges. The Court apparently believed that exclusion of black jurors would not prevent a trial by a fair and impartial jury because they were impartial white jurors. However, in cases such as Swain, and in any case where racial tensions are high, an excluded black juror is more likely to be replaced by a hostile white juror.[6]
Since the Swain decision, defendants have objected frequently to prosecutors' removal of blacks from trial juries by peremptory challenges, but the Supreme Court's "systematic exclusion" test has, according to our research, proved insurmountable in all reported cases.[7]But see, United States v. McDaniels, 379 F.Supp. 1243 (E.D. La.1974), in which the defendant was granted a new trial in the interest of justice because the government had peremptorily challenged six black jurors despite her failure to prove a prima facie case of systematic exclusion. See also, California v. Smith, No. 42219 (Alameda County Super. Ct. 1968), in which a trial court apparently refused to follow Swain and granted a mistrial because the State used racial peremptories in the case on trial. A. Ginger, Jury Selection in Criminal Trials, 518 (1975).
However, because the State's peremptory challenge is not a federally protected right,[8] Louisiana is free to afford its citizens greater protection against invidious peremptory challenges than the minimum required of a state by the Fourteenth Amendment as interpreted by the Supreme Court in Swain. In its present constitution, and in all previous state charters beginning with the Constitution of 1879,[9] Louisiana has chosen not to guarantee peremptory challenges to the prosecution,[10] while assuring criminal defendants the right to challenge jurors peremptorily.[11]
Article 1, § 3 of the 1974 Louisiana Constitution absolutely prohibits discrimination against a person because of race or religion.[12] The wording of the constitution and the transcript of the Constitutional Convention *1082 Debates indicate that the framers intended to abrogate all forms of official discrimination whatsoever with respect to these classifications.[13] Accordingly, our state declaration of the right to individual dignity goes beyond the decisional law construing the Fourteenth Amendment to the United States Constitution.[14] The Fourteenth Amendment as interpreted in Swain, apparently allows a prosecutor to exclude a venireman peremptorily because of his race if it is based on "trial-related considerations." Our state charter, on the other hand, while allowing reasonable discrimination because of other characteristics, permits none because of race or religion, even though the discrimination may be reasonably related to a legitimate state objective such as a criminal prosecution.[15]
Accordingly, if we were required to reach the issue in the instant case, Article I, § 3 of the Louisiana Constitution of 1974 would require that we reject Swain as precedent and grant greater protection against racial discrimination in the selection of petit jurors than that provided by the Fourteenth Amendment as interpreted in Swain. However, an examination of the record in the instant case reflects that the defendant did not object at any time during the trial to the discriminatory exercise of peremptory challenges by the prosecuting attorney. Under these circumstances, I agree that the assignment has no merit, but for the reason that it was not properly preserved for our review.
I also join in the concurring reasons pertaining to Assignments of Error Numbers 5, 6 and 7 filed by Mr. Justice Tate.
NOTES
[1] The assignments of error have been renumbered to present a proper numerical sequence.
[1] Arguably, an admission by a prosecutor that he employed peremptory challenges to exclude blacks regardless of trial considerations in the particular case at hand will suffice to raise a prima facie case under the Fourteenth Amendment. 380 U.S. at 227, 85 S.Ct. 824. See, Barham, The Peremptory Challenge: A Prosecutorial Strategem to Circumvent Due Process, 1 So.L.Rev. 16, ___ (1974).
[2] See, Kuhn, Jury Discrimination: The Next Phase, 41 So.Cal.L.Rev. 235 (1968); Mishkin, The Supreme Court, 1964 Term, 79 Harv.L.Rev. 56 (1965); Comment, Swain v. Alabama: A Constitutional Blueprint for the Perpetuation of the All-White Jury, 52 Va.L.Rev. 1157 (1966); Note, 75 Yale L.J. 322 (1965). Cf. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (Goldberg, J., dissenting).
[3] See, Barham, The Peremptory Challenge: A Prosecutorial Strategem to Circumvent Due Process, 1 So.L.Rev. 16, 24 (1974); Kuhn, Jury Discrimination: The Next Phase, 41 So.Cal.L. Rev. 235, 288 (1968); Comment, Swain v. Alabama: A Constitutional Blueprint for the Perpetuation of the All-White Jury, 52 Va.L.Rev. 1157 (1966). Cf. Swain v. Alabama, 380 U.S. 202, 244, 85 S.Ct. 824, 13 L.Ed.2d 759, 786 (1965) (Goldberg, J., dissenting).
[4] See, Kuhn, Jury Discrimination: The Next Phase, 41 So.Cal.L.Rev. 235, 301 (1968); Mishkin, The Supreme Court, 1964 Term, 79 Harv.L. Rev. 117, 137 (1965); Comment, Swain v. Alabama: A Constitutional Blueprint for the Perpetuation of the All-White Jury, 52 Va.L.Rev. 1157 (1966).
[5] See, e. g., Swain v. Alabama, supra; United States v. Nelson, 529 F.2d 40 (8th Cir. 1976); United States v. Ming, 466 F.2d 1000 (7th Cir.), cert. denied. 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176 (1972); United States v. Carlton, 456 F.2d 207 (5th Cir. 1972); Brown v. Crouse, 425 F.2d 305 (10th Cir. 1970); United States v. Harris, 368 F.Supp. 697 (E.D.Pa.1973), aff'd, 498 F.2d 1164 (3d Cir. 1974); United States ex rel. Dixon v. Cavell, 284 F.Supp. 535 (E.D.Pa. 1968); Watts v. State, 53 Ala.App. 518, 301 So.2d 280 (1974); People v. Newton, 8 Cal. App.3d 359, 87 Cal.Rptr. 394 (1970); Allen v. State, 231 Ga. 17, 200 S.E.2d 106 (1973), cert. denied, 414 U.S. 1159, 94 S.Ct. 919, 39 L.Ed.2d 112 (1974); People v. King, 54 Ill.2d 291, 296 N.E.2d 731 (1973); State v. Jack, 285 So.2d 204 (La.1973); Commonwealth v. Cook, 364 Mass. 767, 308 N.E.2d 508 (1974); People v. Redwine, 50 Mich.App. 593, 213 N.W.2d 841 (1973); State v. Brookins, 468 S.W.2d 42 (Mo.1971); Noah v. State, 495 S.W.2d 260 (Tex.Cr.App. 1973).
[6] See, Comment, Swain v. Alabama: A Constitutional Blueprint for the Perpetuation of the All-White Jury, 52 Va.L.Rev. 1157, 1170 (1966). Cf. Swain v. Alabama, 380 U.S. 202, 244-45, 85 S.Ct. 824, 13 L.Ed.2d 759, 785-86 (1965) (Goldberg, J., dissenting).
[7] See, Barham, The Peremptory Challenge: A Prosecutorial Strategem to Circumvent Due Process, 1 So.L.Rev. 16, 26 (1974); Kuhn, Jury Discrimination: Jury Discrimination: The Next Phase, 41 So.Cal.L.Rev. 235, 293 (1966).
[8] Stilson v. United States, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154 (1919).
[9] La.Const. art. I, § 17; La.Const. art. I, § 10 (1921); La.Const. art. X (1913); La.Const. art. X (1898); La.Const. art. VIII (1879).
[10] Barham, The Peremptory Challenge: A Prosecutorial Strategem to Circumvent Due Process, 1 So.L.Rev. 16, 19 (1974).
[11] La.Const. 1974, art. 1, § 17.
[12] La.Const. art. I, § 3 provides:

"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."
[13] Id.; State of Louisiana Constitutional Convention of 1973 Verbatim Transcripts Aug. 30, 1973 at 3:

"The authors believe that there is absolutely no basis for any discrimination of any sort on the basis of, on account of race or religion, but they do believe that there can be discrimination if it is not arbitrary, not capricious, and not unreasonable as far as the other items contained in the original committee report are concerned.
"The next clause provides that there shall be no discrimination against a person, no discrimination of any sort, on account of `race, or religious ideas, beliefs or affiliations.'" Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 6-10 (1974); Jenkins, The Declaration of Rights, 21 Loy.L.Rev. 9, 16-19 (1975).
[14] Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 6-10 (1974); Jenkins, The Declaration of Rights, 21 Loy.L.Rev. 9, 17-18 (1975).
[15] Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. at 8 (1974): "[T]he provision does not allow the traditional analysis with respect to race or religion. The second sentence (which uses absolute language) . . . permits no discrimination whatsoever with respect to race or religion."