COMMONWEALTH *vs.* VERNARD COOK.

Suffolk.    February 4, 1974. — March 11, 1974.

Present:   TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Homicide.   Jury and Jurors. Constitutional Law,* Due process of law. *Practice, Criminal,* Disclosure of evidence. *Evidence,* Firearm. *Search and Seizure.*

At a criminal trial, a motion by the defendant for a voir dire on the age of the jurors and a motion by him to quash the array of jurors on the ground that persons under twenty-two years of age were excluded under G. L. c. 234, § 1, were properly denied. [770]

At a criminal trial, there was no error in denial of a motion by the defendant, a black, for a mistrial where an all white jury was selected after the prosecutor had peremptorily challenged two black jurors and refused to answer an inquiry whether he was following a policy of challenging all black jurors. [770]

There was no abuse of discretion in denying as not sufficiently specific a pre-trial motion by the defendant in a criminal case for production of police reports. [770]

A defendant in a criminal case who received copies of police records containing a victim's description of the perpetrator too late in his trial to have the documents authenticated did not have material evidence favorable to him unconstitutionally withheld where that victim was not summoned by the defendant and did not testify, and where the judge correctly excluded the records as hearsay and then revoked the initial order for the production thereof. [770-771]

A gun, which was in plain view of policemen who were in the bedroom of the defendant in a criminal case for a legitimate purpose other than a search, was properly seized without a warrant, and was properly admitted in evidence at trial where there was sufficient evidence to show that it might have been used in the commission of the crimes charged. [771-772]

The evidence, largely circumstantial, against a defendant charged with first degree murder committed during a robbery of a store and with related crimes was sufficient for the jury to find him guilty beyond a reasonable doubt, although four eyewitnesses at or near the scene of the crimes failed to identify him. [772]

INDICTMENTS found and returned in the Superior Court on January 16, 1973.

The case was tried before *Spring,* J.

*Lawrence D. Shubow* for the defendant.

*Thomas J. Mundy, Jr.,* Assistant District Attorney, for the Commonwealth.

BRAUCHER, J.    The defendant was convicted of murder in the first degree, armed robbery, armed assault with intent to rob, and unlawfully carrying a pistol. He appeals under G. L. c. 278, §§ 33A-33G, and challenges (1) selection of the jury, (2) withholding and exclusion of exculpatory evidence, (3) admission in evidence of a handgun, and (4) denial of motions for directed verdicts. We affirm the convictions.

We summarize the evidence on behalf of the Commonwealth. About 6 P.M. on December 20, 1972, two black men robbed a Cumberland Farms store in Roslindale. The shorter one asked an employee named Solomon for his wallet, and both demanded the money from the cash register. A second employee, Phelan, gave them about $175, but refused to give them the combination to the safe. There was a struggle, and one of the robbers shot Phelan twice with a .38 caliber pistol. Phelan was dead on arrival at a hospital shortly afterward.

The robbers fled in a car, and a fourteen-year old boy gave the police its license number. About 8 P.M. the police found the same car parked across the street from the house in Dorchester where the defendant, eighteen years old, lived with his stepfather, the registered owner. They took the boy there, and he identified the car. Police officers were admitted to the house. They found the defendant, in a state of partial undress, in a bedroom with his brother. The defendant said that he had been in the house all day and that no one had used the car, but his mother said that he had used the car last on that evening. The defendant got dressed, left the house at a rapid pace, entered a house two doors away, and was apprehended at gunpoint running out the back door of that house. The police seized a loaded .22 caliber pistol seen protruding from under a pillow in the defendant's bedroom.

At the police station $156 in small bills, including forty-one $1 bills, were taken from the defendant. After he had been advised of his rights pursuant to the *Miranda* case,[1] he said he had just cashed a paycheck, but there was evidence that the last paycheck received by him had been cashed on December 15. He denied being in the area of the store, and said he had been the only person in the car.

The following morning, December 21, the defendant gave a different account: he had given fellow employees a ride home from work, and arrived home about a quarter past five. He then visited a friend, Andrews, in Roxbury, and lent Andrews the car. While Andrews was gone the defendant visited a friend's house and talked to the friend's brother, Sonny Henson. Andrews returned the car about 6:30 P.M. and said he had shot a man during a robbery in a Cumberland Farms store.

Fellow employees of the defendant testified that he had driven them home on the day of the robbery and that, before dropping them off, the defendant had picked up a young black man unknown to them. Henson testified that he had not seen the defendant or spoken with him on December 20.

---

[1] *Miranda* v. *Arizona,* 384 U. S. 436 (1966).

1. *Jury selection.* The defendant's motion for a voir dire as to the age of the jurors and his motion to quash the array of jurors were properly denied. *Commonwealth* v. *Lussier, ante,* 414, 423, 424 (1973). Compare G. L. c. 234, § 1, as amended by St. 1973, c. 925, § 76, effective January 1, 1974, terminating the exemption for persons under twenty-two years of age.

The prosecutor peremptorily challenged two black jurors, and refused to answer an inquiry whether he was following a policy of challenging all black jurors. The defendant's motion for a mistrial was denied, and the defendant asserts that an all white jury was selected. There was no error. *Swain* v. *Alabama,* 380 U. S. 202, 222 (1965). See *Apodaca* v. *Oregon,* 406 U. S. 404, 413 (1972) (opinion of White, J.); *Commonwealth* v. *Talbert,* 357 Mass. 146, 147 (1970).

2. *Withholding and exclusion of evidence.* The defendant moved before trial for the production of police reports. The motion was denied. During trial he moved for the production of an entry in the police journal and of certain police teletypes containing descriptions of the robbers broadcast shortly after the robbery. The motion was originally allowed, and the defendant obtained copies of the documents late in the trial. He offered them in evidence as prior inconsistent statements on identification. The judge excluded them as hearsay, revoked the initial order, and denied the motion to produce.

The defendant claims that material evidence favorable to the accused was unconstitutionally withheld, citing *Brady* v. *Maryland,* 373 U. S. 83, 87 (1963). See *Commonwealth* v. *Hurst, ante,* 604, 607 (1974), and cases cited. He also claims that he was prejudiced by delay in production of the documents, which prevented him from locating their custodians, tracing the source of the descriptions, and laying a foundation for admission of the documents in evidence. Further, he claims that they were erroneously excluded.

No abuse of discretion is shown in the denial of the pretrial motion. *Commonwealth* v. *French,* 357 Mass. 356, 399, A-2, A-3 (1970). The documents showed that Solomon

was the source of the descriptions. Solomon, who had been treated for mental illness, failed to identify the defendant and refused to obey a summons by the Commonwealth. Counsel for the defendant was informed of these facts, but did not summon Solomon as a witness. The descriptions given by Solomon to the police were hearsay, and could not be used to impeach him since he did not testify. Compare *Commonwealth* v. *Wilson,* 357 Mass. 49, 57-58 (1970). Since the exclusion of the documents was not based on lack of authentication, there was no prejudice in failure to locate their custodians.

The documents were not offered as business records. Even if we were to assume that they were business records, the judge was not asked to make the preliminary findings required by the statute on such records. G. L. c. 233, § 78, as appearing in St. 1954, c. 442 § 1. See *Carey* v. *New Yorker of Worcester, Inc.* 355 Mass. 450, 453 (1969). Compare McCormick, Evidence (2d ed.) § 310 (1972), with Wigmore, Evidence (3d ed.) § 1530a, n. 1 (1940).

3. *The pistol.* The police had a legitimate reason for being present in the defendant's bedroom, unconnected with a search directed against him, and the .22 caliber pistol was in plain view. It was properly seized. *Coolidge* v. *New Hampshire,* 403 U. S. 443, 465-466 (1971). See *United States* v. *Knight,* 451 F. 2d 275, 278 (5th Cir. 1971), cert. den. sub nom. *Grubbs* v. *United States,* 405 U. S. 965 (1972); note, 62 Georgetown L. J. 401, 451-454 (1973).

The gun was admitted in evidence, and the defendant claims error, citing *Commonwealth* v. *Haney,* 358 Mass. 304, 306 (1970). We think, however, that there was sufficient evidence that the gun might have been used in the commission of the crimes charged. *Commonwealth* v. *McLaughlin,* 352 Mass. 218, 229-230 (1967). *Commonwealth* v. *Mendes,* 361 Mass. 507, 514-515 (1972). It was not clear which robber shot Phelan or whether both or only one was armed. The defendant attributed the shooting to Andrews, and there was testimony that Andrews was about as tall as the taller robber. There was also testimony that the shorter robber had a gun.

The gun was found in the defendant's bedroom a few hours after the robbery, fully loaded, with a bullet in the chamber. The jury could find that it was under the defendant's control. *Commonwealth* v. *Retkovitz,* 222 Mass. 245, 249 (1915). It is immaterial that the police at one point were searching for a .25 caliber pistol.

4. *Directed verdicts.* The evidence connecting the defendant with the robbery was largely circumstantial: his possession and operation of the escape vehicle, his possession of money consistent with the sum stolen and of a loaded pistol, and his contradictory statements and attempted flight, suggesting consciousness of guilt. He contends that these circumstances are insufficient to prove guilt beyond a reasonable doubt, since four eyewitnesses at or near the scene failed to identify him. We think, however, that the evidence warranted reasonable and possible inferences establishing guilt. See *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197 (1968); *Commonwealth* v. *Lussier, ante,* 414, 422 (1973).

Witnesses placed the defendant and another black male together in the escape vehicle within two hours before the robbery. The defendant attributed the robbery to Andrews, but the defendant's alibi for the time of the robbery was contradicted by the only person who, according to the defendant, could have corroborated it. There was evidence that he drove the car not long after the robbery. His possession of a loaded gun a few hours after the robbery, his rapid exits from his house and a neighboring house after the police arrived, and his contradictory accounts of his whereabouts discredit his attempt to fasten sole guilt on Andrews. His false explanation of the money in his possession casts serious doubt on the evidence of a loan he offered for the first time at trial. The jury might also have relied on testimony that the hair style and clothing of the shorter robber were consistent with those of the defendant, disregarding other somewhat confusing testimony on the same points.

5. We have reviewed the record and transcript. Justice does not require a new trial or the entry of a verdict of a

lesser degree of guilt on any of the indictments. G. L. c. 278, § 33E.

*Judgments affirmed.*