COMMONWEALTH *vs.* GEORGE E. MCCARTHY.

Suffolk. March 7, 1978. — June 19, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, & LIACOS, JJ.

*Supreme Judicial Court*, Superintendence of inferior courts. *Practice, Criminal*, New trial.

A judge acting pursuant to G. L. c. 278, § 29, was not required to base his decision to order a new trial of a criminal case on the ground that a particular legal error occurred at trial. [414-415]

A judge's conclusion in granting a new trial to a defendant convicted of murder in the second degree that, while the verdict may have been warranted by the evidence, a verdict of manslaughter may have comported more closely with the weight of the evidence was consistent with the proper exercise of his discretion under G. L. c. 278, § 29, and presented no occasion for relief under c. 211, § 3. [415-416]

This court declined to exercise its rulemaking power under G. L. c. 211, § 3, and to order a judge to make findings in support of his decision to grant a new trial of a criminal case where the judge's reasons for granting the defendant's motion were clear and where the rule which the Commonwealth urged it to adopt was substantially similar to Rule 30 (b) of the Proposed Rules of Criminal Procedure for the District and Superior Courts. [416]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on June 3, 1977.

The case was heard by *Abrams*, J.

The case was submitted on briefs.

*John J. Droney*, District Attorney, & *Peter W. Agnes, Jr.*, Assistant District Attorney, for the Commonwealth.

*Robert A. Stanziani & Randolph M. Gioia* for the defendant.

HENNESSEY, C. J. This is an appeal from an order of a single justice, which order dismissed a petition for extraordinary relief brought by the Commonwealth pursuant to G. L. c. 211, §§ 3, 4A.[1] In this petition, the Commonwealth asserted that, in granting a motion for a new trial to one George E. McCarthy, a defendant who had been convicted of murder in the second degree, the trial judge based his decision not on a conclusion that there were errors at trial, but on the belief that the mandatory sentence of life imprisonment was inappropriate for this case. The Commonwealth thus argued that the judge either abused his discretion or, alternatively, exceeded his jurisdiction under G. L. c. 278, § 29, by usurping the power reserved to the legislative and executive departments under art. 30 of the Declaration of Rights of the Constitution of the Commonwealth (the power to fix punishment for crimes; the power to put an end to criminal prosecutions). The Commonwealth urged the single justice (1) to vacate the order granting a new trial, and (2) to reinstate the jury verdict of guilty of murder in the second degree. Alternatively, the Commonwealth asked the single justice either to retain jurisdiction of the case and remand to the Superior Court for further findings, or to reserve and report the questions of law to the full bench.

---

[1] General Laws c. 211, § 3, as appearing in St. 1973, c. 1114, § 44, provides in pertinent part: "The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue all writs and processes to such courts . . . which may be necessary to the furtherance of justice and to the regular execution of the laws."

General Laws c. 211, § 4A, as amended through St. 1973, c. 1114, § 46, provides in pertinent part; "The supreme judicial court or a justice thereof may transfer for partial or final disposition in any appropriate lower court any cause or matter which might otherwise be disposed of by a single justice . . . . The supreme judicial court may also direct any cause or matter to be transferred from a lower court to it in whole or in part for further action or directions, and in case of partial transfer may issue such orders or direction in regards to the part of such cause or matter not so transferred as justice may require."

We agree with the single justice's conclusion that this is not an appropriate case in which to exercise our extraordinary powers under G. L. c. 211, § 3. Accordingly, we affirm the dismissal of the Commonwealth's petition.

At the defendant's trial, there was testimony as to the following facts. On April 16, 1976, after spending a social evening together, Richard Doherty (the victim), his younger brother Joseph, and a few friends drove to the Doherty residence at 8 Carter Terrace, Somerville. The group listened to records for a short time and then Richard and his friends returned to the car.

While the driver backed out of the street, Richard observed his parents' neighbors, Edward J. McCarthy (McCarthy) and his son George (the defendant) in a car heading toward the McCarthy residence at 10 Carter Terrace. Richard immediately told the driver to let him out of the car. He then ran down the street in the direction of the McCarthy residence. Moments later, at approximately 10:50 P.M., four shots were heard in the vicinity of the McCarthy driveway.

An officer called to the scene testified that, shortly after he arrived at 10 Carter Terrace, he observed the body of Richard Doherty lying on its side near the McCarthys' car. The victim's left hand was clutched in a fist and held a chain six to eight inches in length.

The defendant immediately volunteered to the officer that he had shot the victim, but insisted that he had had no choice. It was the defendant's testimony that, after the defendant's father backed the car into the driveway, Richard Doherty appeared suddenly, and, with a chain in his fist, began to punch the elder McCarthy. The defendant warned the victim to leave his father alone, and fired two warning shots. When the victim advanced toward him, the defendant fired directly at Doherty.

There was testimony that after the defendant admitted the shooting, the officer placed him under arrest. A patdown search revealed that the defendant wore a shoulder holster carrying a .380 semi-automatic pistol. The weapon still contained two live rounds of ammunition marked ".380

automatic," the same variety as was later found in the victim's body.

At the close of the evidence, the defendant filed a motion for a directed verdict, which motion was taken under advisement pursuant to G. L. c. 278, § 11.[2] On March 17, 1977, the jury returned a verdict of guilty of murder in the second degree. The following day, after a hearing, the judge denied the defendant's motion for a directed verdict, but suggested that the defendant file a motion for a new trial. The defendant did so on March 21, 1977, and on March 25, 1977, the judge ruled: "After hearing, in the exercise of that discretionary power granted pursuant to General Laws, Chapter 278, Section 29, wherein it appears that justice may not have been done, the within motion is allowed, and a new trial granted."[3]

During the course of the hearing on the motion for a new trial, the judge made the following comments: "You could say the day after tomorrow that if there was a plea [of guilty to manslaughter], that was obvious coercion, because he was under the gun. . . .

"I think the motion for a new trial is the only thing to do. I don't like to be substituting my judgment for somebody else. But you and I both know that there are guys up in Walpole that are there for second-degree murder, and if you put them in a line and put McCarthy with them and put the quantum — I'm not — I'm just looking at them as a group — and you would be kind of surprised. . . .

---

[2] General Laws c. 278, § 11, as amended through St. 1964, c. 108, §§ 1 and 2, provides in pertinent part: "If a motion for a directed verdict is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict."

[3] General Laws c. 278, § 29, as appearing in St. 1966, c. 301, provides: "If it appears to the court that justice may not have been done, a justice of the superior court may at any time, upon motion in writing of the defendant, grant a new trial."

"I am inclined to [allow the motion], because it seems to be disproportionate, when you take those people who are up there . . . — I haven't had that many, but, say, enough — and you must have, too — plenty of cases of first degree murder and all of a sudden they come in on second degree, including some that you and I would both consider first-degree murder, and some manslaughter; had them in armed robbery, manslaughter — that it just seems to be disproportionate. . . .

"I'm extremely reluctant to ever interfere, because when you tell . . . [the jury] it's theirs, it's theirs. I am, as is quite apparent, I am tempted in this case, because I know something they don't know — the jury; I know the quantum of punishment. . . . I know that the penalty is life, mandatory. I know that he actually serves 15 years. I know if it's manslaughter, it can be a big spread." On the basis of these comments, the Commonwealth sought appellate review under G. L. c. 211, § 3.

1. We first observe that the order of the Superior Court judge which forms the basis of the Commonwealth's appeal is interlocutory in nature. See *Fine* v. *Commonwealth*, 312 Mass. 252, 256 (1942). Further, it is not the type of interlocutory ruling from which the Commonwealth may appeal pursuant to G. L. c. 278, § 28E, as amended by St. 1972, c. 740, § 16.[4] Therefore, as the petitioner concedes, the only

---

[4] General Laws c. 278, § 28E, provides in pertinent part: "An appeal may be taken by and on behalf of the commonwealth by the attorney general or a district attorney from the superior court to the supreme judicial court in all felony cases from a decision, order or judgment of the court (1) allowing a motion to dismiss an indictment or complaint, or (2) allowing a motion to grant appropriate relief under the provisions of section forty-seven A of chapter two hundred and seventy-seven. On application for an appeal in a felony case by and on behalf of the commonwealth by the attorney general or a district attorney, or by the defendant, a single justice or the chief justice of the supreme judicial court may, upon determining that the administration of justice would be facilitated thereby, grant an interlocutory appeal from a decision, order or judgment of the superior court determining a motion to suppress evidence prior to trial and a single justice shall hear the same or shall report the same to the full court or to the appeals court for hearing . . . ."

means of review open to the Commonwealth is by way of invoking this court's general superintendence power under G. L. c. 211, § 3.

It is well settled that we will review interlocutory rulings in criminal cases under G. L. c. 211, § 3, "[o]nly in the most exceptional circumstances," *Gilday* v. *Commonwealth,* 360 Mass. 170, 171 (1971), and only when "it becomes necessary to protect substantive rights." *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 755 (1977), quoting from *Barber* v. *Commonwealth,* 353 Mass 236, 239 (1967). See generally *A Juvenile* v. *Commonwealth, ante* 104 (1978); *Burke* v. *Commonwealth,* 373 Mass. 157, 158-159 (1977); *Commonwealth* v. *Frado,* 372 Mass. 866 (1977); *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 526 (1974); *Corey* v. *Commonwealth,* 364 Mass. 137, 138 (1973); *Myers* v. *Commonwealth,* 363 Mass. 843, 844 (1973); *Barber* v. *Commonwealth, supra.* As to the Commonwealth's argument that the trial judge exceeded his jurisdiction in vacating a judgment of guilty, we assume without deciding that, under some circumstances, this may be the type of interlocutory ruling which results in "irremediable" prejudice, and which therefore may be reviewable under G. L. c. 211, § 3. See *Gilday* v. *Commonwealth, supra.* We further assume without deciding that under some circumstances, the Commonwealth may assert substantive rights under G. L. c. 211, § 3. *Commonwealth* v. *Frado, supra.* In the instant case, however, we are not persuaded that there has been any infringement of the Commonwealth's substantive rights.

First, we reject the Commonwealth's suggestion that, under G. L. c. 278, § 29, it was necessary for the judge to base his decision to order a new trial on the ground that a particular legal error occurred at trial. A motion for a new trial is addressed to the sound discretion of the trial judge. *Commonwealth* v. *Gagne,* 367 Mass. 519, 526 (1975). *Commonwealth* v. *Rembiszewski,* 363 Mass. 311, 322 (1973) *Commonwealth* v. *Slaney,* 345 Mass. 135, 142 (1962). *Commonwealth* v. *Galvin,* 323 Mass. 205, 220 (1948). While the

proper exercise of this discretion under G. L. c. 278, § 29, of course does not include actions which are arbitrary, frivolous, or contrary to law, see *Bartley* v. *Phillips*, 317 Mass. 35, 42 (1944), it necessarily includes the flexibility to consider the case as a whole, to assess the weight of the evidence, and to bring the interest of justice to bear.[5] See generally *Commonwealth* v. *Stout*, 356 Mass. 237, 242 (1969).

Second, we disagree with the Commonwealth's analysis that the judge's remarks during the hearing on the motion for a new trial show either an abuse of discretion or an intention to grant the motion in order to circumvent the legislative mandate of a life sentence. A careful reading of the judge's comments leads us to conclude that the judge did not exercise his discretion in an arbitrary or frivolous manner.[6] On the contrary, he expressed a general reluctance to interfere with the jury's verdict, and ordered a new trial only after what appears to be a thoughtful assessment of the case as a whole.

Further, the substance of the judge's remarks did not go beyond permissible limits. According to our understanding of the judge's remarks, it was the jury's verdict, and not the

---

[5] Indeed, long before the Legislature explicitly authorized the trial judge to consider the interests of justice, this court recognized that, even when a judge is satisfied that the trial before him was fair and impartial, he must, on a motion for a new trial, "look into the evidence, upon which the verdict was founded, in order that [he] may ascertain whether the cause . . . is such as would or ought to produce a different result in the minds of another intelligent jury. . . . [He] must necessarily . . . [consider] the evidence, and must judge for [himself], of the probable bearing of the circumstances . . . ." *Commonwealth* v. *Green*, 17 Mass. 515, 550 (1822). Cf. *Fine* v. *Commonwealth*, 312 Mass. 252, 257 (1942) ("even if there was no mistake and the final conclusion of the judge was reached simply through more mature reflection and more careful consideration, there was no error in law").

[6] We state, *supra*, that we "assume without deciding" that the Commonwealth may assert substantive rights under some circumstances in appealing a criminal case under G. L. c. 211, § 3. Perhaps the Commonwealth would be entitled to relief under the statute in a case which, unlike the instant case, showed that the judge acted arbitrarily, frivolously, with abuse of discretion, or contrary to law, in granting a new trial after a guilty verdict.

statutory sentence, that seemed "disproportionate" in the experience of the judge. Indeed, on the subject of sentencing, the judge clearly pointed out that, whatever the ultimate conviction would be, the defendant most likely would be in prison "for a [long] period of time." We thus construe the remarks in question as part of the process of weighing the evidence to determine whether, in the experience of the judge, the verdict was a just one. At most, the comments indicate the judge's conclusion that, while a verdict of murder in the second degree may have been warranted by the evidence, a verdict of manslaughter not only may have been possible, but also may have comported more closely with the weight of the evidence, and thus may have been more consonant with justice. As we indicated above, this conclusion is consistent with the proper exercise of the judge's discretion under G. L. c, 278, § 29. Thus, the Commonwealth has presented us with no occasion for relief under G. L. c. 211, § 3.

2. We decline to exercise our rulemaking power under G. L. c. 211, § 3, and to order the judge to make findings in support of his ruling on the motion for a new trial. First, as we indicated *supra*, we think that the judge's reasons for granting the defendant's motion were clear. Second, we note that the rule which the Commonwealth urges us to adopt is substantially similar to Rule 30 (b) of the Proposed Rules of Criminal Procedure for the District and Superior Courts (Supp. April 15, 1977), which rule would require judges to "make such findings of fact as are necessary to resolve [the] defendant's allegations of errors of law." On July 30, 1976, the Proposed Rules of Criminal Procedure were submitted to this court in their entirety for "review and promulgation." We think it more appropriate to consider adopting such a requirement in the context of the Proposed Rules of Criminal Procedure rather than to entertain similar individual proposals on a piecemeal, case by case basis.

*Order of the single justice affirmed.*