COMMONWEALTH vs. VERNARD COOK.

Suffolk.  December 4, 1979. — April 2, 1980.

Present: HENNESSEY, C.J., QUIRICO, LIACOS, & ABRAMS, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts.  *Practice, Criminal,* Appeal, New trial, Fair trial, Fugitive from justice.  *Constitutional Law,* Confrontation of witnesses.

Discussion of the propriety of permitting the Commonwealth interlocutory review under G. L. c. 211, § 3, of a judge's allowance of a defendant's motion for a new trial.  [319-320]

The standard of review under G. L. c. 211, § 3, of the exercise of judicial discretion in granting a new trial under G. L. c. 278, § 29, is whether the judge acted arbitrarily, frivolously, or contrary to law, and, absent an abuse of discretion by a single justice in denying relief under c. 211, § 3, the Commonwealth can have no relief from this court.  [320-321]

In a proceeding on a defendant's motion for a new trial, evidence that the alleged coparticipant in the crime was called to the stand by the prosecutor but, as to all but innocuous questions, he refused to answer on the ground that his answers might tend to incriminate him, and that defense counsel did not at any point object, except, request a voir dire, or request a jury instruction warranted a finding of prejudice to the defendant as the result of ineffective assistance of counsel.  [321-325]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on June 28, 1979.

The case was heard by *Wilkins,* J.

*Thomas J. Mundy,* Assistant District Attorney, for the Commonwealth.

*Roger Witkin* for the defendant.

QUIRICO, J.  This is a petition by the Commonwealth under G. L. c. 211, § 3, for relief from the action of a judge of the Superior Court in allowing the defendant's motion for

new trial under G. L. c. 278, § 29.[1] A single justice of this court denied the Commonwealth relief and ordered the petition dismissed. The case is before us on the Commonwealth's appeal from the judgment of dismissal. We affirm the judgment.

The defendant, Vernard Cook, was convicted of murder in the first degree and related offenses,[2] by a jury on June 12, 1973, and appealed therefrom to this court. We affirmed his conviction by our opinion in *Commonwealth* v. *Cook*, 364 Mass. 767 (1974). For a summary of the evidence presented at Cook's trial, see *id.* at 768-769. In addition to reviewing Cook's assignments of error on direct appeal, we reviewed the record and transcript pursuant to our powers under G. L. c. 278, § 33E, and held that "[j]ustice does not require a new trial or the entry of a verdict of a lesser degree of guilt on any of the indictments." *Id.* at 772-773. The point now raised was not argued in the prior appeal and was not discussed by this court in its opinion.

On December 16, 1976, Cook filed a pro se motion for a new trial, and a judge of the Superior Court appointed new counsel to represent him thereon. On February 28, 1977, the new counsel filed a substitute motion for a new trial, on the grounds of ineffective assistance of counsel, and judicial and prosecutorial overreaching. The judge who had presided over the original trial had retired, so the motion was heard by another judge of the Superior Court (motion judge). Hearings on the motion were held on December 21, 1977, and again on March 2, 1979; the delay between the two hearings being due to the unavailability of a witness. The original trial counsel for Cook and the prosecutor for the Commonwealth testified. On May 14, 1979, the motion judge filed Findings, Rulings and Order granting Cook's motion.

---

[1] General Laws c. 278, § 29, was replaced by Mass. R. Crim. P. 30, 379 Mass. 900 (effective July 1, 1979).

[2] Armed robbery, armed assault with intent to rob, and unlawfully carrying a pistol on his person.

The Commonwealth sought relief from that decision and order by the present petition under G. L. c. 211, § 3. The single justice who heard the petition filed a memorandum in which he "assume[d], without deciding, that the Commonwealth may seek relief under G. L. c. 211, § 3, from the granting of a motion for a new trial," and ruled that "[a]lthough the circumstances do not seem to have required the allowance of the motion . . . I cannot rule that the allowance . . . was an abuse of discretion." The Commonwealth is appealing from that decision of the single justice.

After the parties argued before this court, Cook's counsel filed a "suggestion of mootness," because Cook had earlier escaped from prison and his whereabouts were still unknown. A fugitive from justice cannot pursue an appeal, because "[b]y his voluntary act, which renders him unavailable to await the decision of the court, he has waived appellate rights." *Commonwealth* v. *Rezendes*, 353 Mass. 228, 228 (1967). We see no reason to deprive the Commonwealth of appeal because of the act of the defendant, however. The Commonwealth is entitled to a determination of what its rights will be should Cook be apprehended or otherwise return to Massachusetts.

The facts forming the basis for the motion for a new trial were, in broad outline, as follows. During Cook's trial, the prosecutor called to the stand Joseph Andrews, Cook's co-participant in the crime, whose trial had been severed under the Bruton rule.[3] Andrews testified, but, as to all but innocuous questions, he refused to answer on the ground that his answers might tend to incriminate him. Cook's trial counsel did not at any point object, except, request a voir dire, or request a jury instruction.

A somewhat more lengthy recapitulation of the Andrews episode is necessary to provide the proper factual context for the ruling of the motion judge. The evidence against Cook at his trial was, as we noted on direct appeal, largely cir-

---

[3] *Bruton* v. *United States*, 391 U.S. 123 (1968). Andrews had given the police a full confession in which he implicated Cook.

cumstantial. *Cook, supra* at 772.[4] The prosecutor told the jury in his opening statement that Cook and Andrews were alleged to have committed the robbery and murder. Before Andrews was called to the stand, other eyewitnesses had testified that a tall man and a short man participated in the robbery.[5] As soon as Andrews was sworn as a witness but before he took the stand, he said, "I don't want to say anything." His own attorney immediately advised him that he had a right to refuse to answer any question the prosecutor might ask. At that point in the trial neither the judge, nor the prosecutor, nor Cook's trial counsel did anything to explore whether Andrews intended to invoke his privilege against self-incrimination. The judge simply stated: "He may take the stand." Andrews answered several preliminary questions, including his name, the fact that he was then in custody at Charles Street jail,[6] that he had known Cook for eight or nine years, and that he, Andrews, lived one block from Humboldt Avenue. An eyewitness to the escape had earlier testified that at some time after the robbery he identified the escape car which was then parked on Humboldt Avenue.

When the prosecutor asked Andrews, "Did you see the defendant back on December 20th, 1972" (the date of the robbery), Andrews pleaded the Fifth Amendment and refused to answer on the ground that he might incriminate himself. He gave the same answer when asked whether or not Vernard Cook was the owner of an automobile during the month of December, 1972.

---

[4] None of the eyewitnesses could identify Cook. He was linked to the crime through possession and operation of the escape vehicle, possession of money and a gun, attempted flight when the police came to his home, and inconsistent statements to the police. *Commonwealth* v. *Cook,* 364 Mass. 767, 772 (1974).

[5] One eyewitness estimated the height of the taller man as 6'1" or 6'2", and the shorter man as 5'7".

[6] Although the jury was never told that Andrews was formally charged with a crime, the fact that he was being held at Charles Street jail may have alerted some jurors that he was awaiting trial.

When asked if he knew Sergeant Whalen (to whom he had made a confession), Andrews replied that he had seen him before. The prosecutor then asked if Andrews had ever spoken to Whalen, and Andrews invoked the privilege against self-incrimination. After several further questions, in response to many of which Andrews invoked the same privilege, the prosecutor showed Andrews "this piece of paper" and asked him to read it to himself. He next asked Andrews if he had read enough of the document to recognize it, and Andrews answered in the affirmative. The prosecutor asked if the paper was "a stenographic copy of the statement that you gave to Sergeant Whalen," whereupon Andrews again invoked the same privilege. Direct examination then ceased. Cook's trial counsel asked one question (which the motion judge in his findings characterized as "meaningless"): "Sir, have you ever seen or talked to me?" The witness answered that he had not.

The evidence presented at the hearing on the motion for new trial revealed that there had been preliminary negotiations before Cook's trial for a plea arrangement for Andrews. Both the Cook and the Andrews prosecutions were being handled by the same assistant district attorney. The prosecutor testified that he had a strong case of murder in the first degree against Andrews including a confession made after full Miranda warnings, and that he had offered to accept a plea to murder in the second degree from him in exchange for his testimony against Cook. No agreement was ever reached, however, and when the prosecutor called Andrews to testify at the Cook trial, he did not know whether Andrews would testify fully or invoke his privilege. Andrews' attorney testified that he suggested to the prosecutor that he call Andrews. Cook's trial counsel testified that he had failed to take any action regarding the Andrews episode because he was unaware at the time of any legal basis for doing so.

The contents of Andrews' confession never reached the jury, so there was no per se violation of *Bruton, supra,* or of *Douglas* v. *Alabama,* 380 U.S. 415 (1965). The motion

judge ruled, however, that the incident taken as a whole, with inferences the jury might have drawn from Andrews' refusal to answer certain questions, "added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant," quoting from *Namet* v. *United States*, 373 U.S. 179, 187 (1962). He found that the prosecutor "consciously [came] close to the edge of committing a *Bruton* and *Douglas* error . . . [and] in effect, denied confrontation to the defendant." Accordingly, he granted Cook a new trial.

1. *Propriety of review under G. L. c. 211, § 3.* General Laws c. 211, § 3, as amended through St. 1973, c. 1114, § 44, provides in pertinent part: "The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided . . . ." The order of the Superior Court judge is not appealable under G. L. c. 278, § 28E, governing interlocutory appeals. *Commonwealth* v. *McCarthy*, 375 Mass. 409, 413 (1978).[7] Cook argues that the Commonwealth has a remedy under G. L. c: 278, § 33E. He cites no case, however, construing § 33E as providing a remedy to the Commonwealth in the case of the grant of a motion under G. L. c. 278, § 29. See G. L. c. 278, § 33E.[8]

The fact that the Commonwealth has no other remedy does not make c. 211, § 3, review automatic, however. We have rarely allowed Commonwealth appeals of interlocutory matters under our supervisory powers. See *McCarthy, supra* at 414; *Commonwealth* v. *Frado*, 372 Mass. 866, 866

[7] Under Mass. R. Crim. P. 30 (c) (8), 378 Mass. 902 (effective July 1, 1979), either party may appeal a postconviction order to the Appeals Court.

[8] General Laws c. 278, § 33E, reads in pertinent part: "If any motion is filed in the superior court after rescript, no appeal shall lie from the decision of that court upon such motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court."

(1977).[9]  We will review interlocutory matters in criminal cases only when "substantial claims" of "irremediable" error are presented, *Beckman* v. *Commonwealth*, 377 Mass. 810, 812 (1979), and only in "exceptional circumstances," *Gilday* v. *Commonwealth*, 360 Mass. 170, 171 (1971), where "it becomes necessary to protect substantive rights," *Barber* v. *Commonwealth*, 353 Mass. 236, 239 (1967).  See also *Commonwealth* v. *Longval*, 378 Mass. 246, 252-253 (1979); *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 755 (1977); *Meyers* v. *Commonwealth*, 363 Mass. 843, 844 (1973).  The "right" the Commonwealth seeks to protect here presumably is the efficient administration of justice; it seeks to avoid utilizing its resources to conduct what it contends is an unnecessary retrial.  As we did in *McCarthy, supra,* and as the single justice did in this case, we shall assume that the Commonwealth may seek such relief under G. L. c. 211, § 3.[10]

2. *Standard of review.*  The motion judge granted the motion for new trial pursuant to his power under G. L. c. 278, § 29, as amended through St. 1966, c. 301.[11]  A motion for new trial is generally a matter for the sound discretion of the trial judge.  *Earl* v. *Commonwealth*, 356 Mass. 181, 184 (1969).  *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25, 32 (1923).  If the original trial was "infected with prejudicial constitutional error," the trial judge has no dis-

---

[9] In the one case where we considered a Commonwealth appeal of the grant of a motion for a new trial, we stated that we "assume without deciding that, under some circumstances [vacating a judgment of guilty] may be the type of interlocutory ruling which results in 'irremediable' prejudice, and which therefore may be reviewable under G. L. c. 211, § 3." *Commonwealth* v. *McCarthy*, 375 Mass. 409, 414 (1978).

[10] For appeals from orders allowing new trial motions after July 1, 1979, see Mass. R. Crim. P. 30 (c) (8), 378 Mass. 902 (effective July 1, 1979).

[11] General Laws c. 278, § 29, was repealed by St. 1979, c. 344, § 46. Motions for new trial are now governed by Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979).  The new rule maintains the same standard as former G. L. c. 278, § 29: "if it appears that justice may not have been done."

cretion to deny the motion.[12] *Lannon* v. *Commonwealth,* 379 Mass. 786, 788 (1980). *Commonwealth* v. *Penrose,* 363 Mass. 677, 681 (1973). *Earl, supra.* Even in the absence of constitutional error, the motion judge has discretion to "set aside a verdict in order to prevent a miscarriage of justice when a decisive or pertinent point affecting substantial rights has not been raised by exception at the trial." *Dascalakis, supra* at 25. See *Commonwealth* v. *Harrington,* 379 Mass. 446, 449 (1980); *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229 (1973); *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). This is especially true where, as here, the defendant alleges that he was represented at trial and on direct appeal by ineffective counsel.

The standard of review under G. L. c. 211, § 3, of the exercise of judicial discretion in granting a new trial under G. L. c. 278, § 29, is whether the judge acted arbitrarily, frivolously, or contrary to law. *McCarthy, supra* at 415 & n.6. Furthermore, absent an abuse of discretion by the single justice in denying relief under G. L. c. 211, § 3, the Commonwealth can have no relief from the full court. See *Cefalu* v. *Globe Newspaper Co.,* 377 Mass. 907 (1979).

3. *Grant of a new trial.* Before discussing the merits of the motion judge's ruling, we wish to make clear that the validity of Andrews' exercise of his privilege against self-incrimination is not before us, and we intimate no opinion thereon. Additionally, in this court, Cook explicitly waived his claim of prosecutorial misconduct at the trial, and we therefore make no attempt to analyze the actions or motives of the prosecutor. Cook relies on ineffective assistance of counsel and the denial of confrontation in support of his claim that the motion judge did not act arbitrarily in granting his motion.

The question whether Cook was deprived of effective assistance of counsel at trial with regard to the Andrews epi-

---

[12] The motion judge ruled in the alternative: "I rule that 'the original trial was infected with prejudicial constitutional error' . . . . I have no discretion to deny a new trial . . . . [I]f I had discretion I would grant the motion . . . ."

sode turns on whether his trial counsel's inattention, negligence, or ignorance affected Cook's trial in such a way and to such an extent as to prejudice his defense. See *Commonwealth* v. *Rondeau*, 378 Mass. 408, 412 (1979) (two-step test for ineffective assistance of counsel). Therefore, we must first determine whether the evidence supports the conclusion of the motion judge that the Andrews incident deprived Cook of a fair trial. See generally *Halner* v. *Commonwealth*, 378 Mass. 388 (1979).

In *Bruton* v. *United States*, 391 U.S. 123 (1968), the Supreme Court held that it was error of constitutional magnitude to try two codefendants together when the statement of Evans, implicating Bruton, was admitted in evidence only as to Evans. A jury instruction was held not to cure the error. "[B]ecause of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id.* at 126.[13]

In *Douglas* v. *Alabama*, 380 U.S. 415 (1965), the prosecutor called as a witness, a codefendant (Loyd), who had already been tried and convicted. The prosecutor read from a document purporting to be Loyd's confession, implicating Douglas. When asked to confirm or deny that he had made each statement, Loyd invoked his privilege each time because his appeal was pending. *Id.* at 416. The procedure was held to violate Douglas' right to confront and cross-examine a witness against him, because Loyd had not affirmed the statements as his. *Id.* at 420.

The leading case concerning the situation before us is *Namet* v. *United States*, 373 U.S. 179 (1963). Two alleged coparticipants who had pleaded guilty to gambling charges were called to testify against Namet, an alleged participant

---

[13] The confrontation clause was held applicable to the States through the Fourteenth Amendment in *Pointer* v. *Texas*, 380 U.S. 400 (1965).

with the first two. The presiding judge held a conference out of the jury's hearing and ruled that the witnesses had a limited privilege as to dealings with third persons but not as to their own gambling activities, because they had already pleaded guilty (but could be subject to further charges of bribery or conspiracy). The Supreme Court upheld this procedure, but noted certain facts which distinguish *Namet* from the present case. In *Namet*, the government's closing argument included no reference to the refusal to testify, the jury were not told that the coparticipants were arrested or charged together with Namet, and the judge fully instructed the jury not to draw any adverse inferences about Namet's guilt from the refusal of the witnesses to testify. See *Namet, supra* at 181-184. Furthermore, Namet's attorney objected, and obtained a bench conference resulting in a ruling on the validity of the witnesses' privilege, a procedure not followed by Cook's attorney.

Although the Court found no error in *Namet*, it established the test for such cases as the present one: "error may be based upon a concept of prosecutorial misconduct, when the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege . . . [or] in the circumstances of a given case, inferences from a witness' refusal to answer [may have] added critical weight to the prosecution's case in a form not subject to cross-examination, and thus [may] unfairly [have] prejudiced the defendant." *Id.* at 186-187.[14]

We have applied the *Namet* test in this Commonwealth. See *Commonwealth* v. *Martin*, 372 Mass. 412, 414 (1977). "When a witness in a criminal case refuses to answer questions on the ground of self-incrimination, lay triers may readily, although improperly, make invidious inferences as-

[14] The Court stressed in *Namet* that it was not dealing with constitutional error, but only "a claim of evidentiary trial error." In *Douglas, supra* at 420, the Supreme Court held that the denial of confrontation at Douglas' trial was a violation of the second *Namet* test, however. Therefore, the motion judge did not err in ruling that a violation of the second *Namet* test could, in certain circumstances, rise to the level of constitutional error.

sociating the witness with the defendant in an illegal enterprise; and the prejudice to the defendant may be especially hard to remove because he cannot cross-examine the witness as to 'testimony' which is in the form of a kind of riddling silence" (footnotes omitted). *Id.* at 413-414. These inferences, and the ability to attack them, are especially poignant when the witness is a coparticipant in the crime. See generally *Commonwealth* v. *Funches,* 379 Mass. 283, 292 (1979). See *United States* v. *Ritz,* 548 F.2d 510, 518 (5th Cir. 1977); *San Fratello* v. *United States,* 340 F.2d 560, 565 (5th Cir. 1965).[15] Such "riddling silences" can create an "atmosphere of guilt" that is impossible to refute. See *United States* v. *Coppola,* 479 F.2d 1153, 1160 (10th Cir. 1973).

We have affirmed convictions where coparticipants and other witnesses had invoked their Fifth Amendment privilege, but those cases are distinguishable on their facts from the present case. See *Commonwealth* v. *Fazio,* 375 Mass. 451, 458-462 (1978); *Commonwealth* v. *Francis,* 375 Mass. 211, 213-217, cert. denied, 439 U.S. 872 (1978); *Commonwealth* v. *Martino,* 361 Mass. 720, 722 (1972); *Commonwealth* v. *Granito,* 326 Mass. 494, 498-499 (1950). The crux of these decisions is that, considering the entire situation that occurred at the trial, there is no indication that either of the two tests of *Namet, supra* (as applied in *Martin, supra*), has been violated. In the present case, the factual situation differs. The prosecutor told the jury in his opening statement that Joseph Andrews was the tall man alleged to have committed the robbery with Cook. Eyewitnesses testified that a tall man and a short man committed the robbery, but none could identify the latter. Andrews, visibly taller than Cook, was led into the courtroom and

---

[15] When the coparticipant witness invokes his privilege on the stand and is subsequently granted immunity out of the hearing of the jury, the prejudice is not so great because he is then subject to full cross-examination. See *United States* v. *Peterson,* 549 F.2d 654, 658-659 (9th Cir. 1977); *United States* v. *Quinn,* 543 F.2d 640, 650 (8th Cir. 1976); *United States* v. *Dingle,* 546 F.2d 1378, 1380-1382 (10th Cir. 1976).

refused to testify as to anything concerning the incident. Andrews admitted to having spoken to Sergeant Whalen, and admitted that he recognized the piece of paper handed to him by the prosecutor. Andrews refused to answer when asked if the paper was a copy of the statement he gave to Whalen. The jury could well have inferred that Andrews had implicated Cook in the statement. We cannot say that the evidence in this case, which includes total inaction on the part of Cook's trial counsel, does not support the motion judge's finding of prejudice to the defendant as the result of ineffective assistance of counsel. Nor can we say that the motion judge abused his discretion or acted in a manner "arbitrary, frivolous, or contrary to law," *McCarthy, supra* at 415, in ruling that the Andrews incident "added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Namet, supra* at 187. *Martin, supra* at 414. The test is not what we would have done if we were in the position of the motion judge after hearing the same evidence which he heard. Rather it is whether that evidence, as it appears in the record before us, warrants the action of the motion judge in ordering a new trial. We believe that it does and in this situation we do not allow ourselves the idle luxury of speculating on whether we would have acted differently if we had presided over the hearing on the motion for a new trial.

*Judgment affirmed.*