COMMONWEALTH *vs.* JAMES PRESTON.

Essex.    September 11, 1984. — November 15, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Appeal by Commonwealth, New trial, Judicial discretion. *Rules of Criminal Procedure.*

An appeal by the Commonwealth under G. L. c. 278, § 28E, from an order of the Superior Court allowing a motion for a new trial in a murder case was properly brought in the Appeals Court in the first instance. [321]

Where the defendant in a murder case had moved for a required finding of not guilty pursuant to Mass. R. Crim. P. 25 (b) (1), and after the denial of that motion had moved for a new trial under Mass. R. Crim. P. 30 (b), the judge had authority to allow the defendant's motion for a new trial "in accordance with Mass. R. Crim. P. 25 (b) (2)." [321-324]

The judge in a murder case did not abuse his discretion in allowing the defendant's motion for a new trial on the ground that the verdict was against the weight of the evidence. [324-325]

INDICTMENT found and returned in the Superior Court Department on February 9, 1983.

The case was tried before *Francis L. Lappin,* J., and motions for a required finding of not guilty and for a new trial were heard by him.

The case was reported by the Appeals Court for direct appellate review.

*Dyanne Klein Polatin,* Assistant District Attorney (*Robert N. Weiner,* Assistant District Attorney, with her) for the Commonwealth.

*Willie J. Davis* for the defendant.

LYNCH, J. The defendant was found guilty by a jury of the murder in the second degree of Thea Pierce. After the verdict, the Superior Court judge denied the defendant's motion for a required finding of not guilty, but allowed a motion for a new trial. The Commonwealth appealed, contending that the allowance of the motion constituted abuse of discretion and error of

law. The case was entered in the Appeals Court and after oral argument that court reported the case here, stating "that the case presents questions of unusual legal significance which may affect the efficient administration of justice (G. L. c. 211A, § 12), including the question whether the Commonwealth's appeal should have been docketed initially in the Supreme Judicial Court." We conclude that the trial judge did not abuse his discretion or commit error of law by granting the defendant a new trial, and therefore we affirm the order of the trial judge granting the defendant a new trial.

On January 17, 1983, Lawrence police, responding to an anonymous telephone call, went to the third floor apartment of Thea Pierce. There they found her lying dead in her partially-filled bathtub. She had been strangled with a scarf tightly knotted around her neck. The victim was nude below the waist, and her bra, blouse, and sweater had been pulled above her breasts. Her wrists were bound together behind her back. Another binding connected her hands to her ankles, which were also bound. The victim's apartment was in considerable disarray, and the telephone line had been severed, but there was no evidence of forced entry.

Three days prior to the presumed date of the murder, a United States postal inspector met with the defendant in his basement apartment, located in the same building as the victim's apartment, to discuss an earlier complaint from the victim regarding mail and checks stolen from her. At that interview, the defendant admitted signing his own name to one of the disputed checks, claiming he had received it in payment for cocaine sold to the victim. At trial, the Commonwealth introduced evidence that the defendant had forged the victim's name on another check, and that a bank statement mailed to the victim was found in the defendant's apartment. The victim's address book was found in her apartment and was open at the name and telephone number of the postal inspector.

On January 14, the alleged date of Thea Pierce's murder, Wendy Hoehn, a resident of the same apartment building, observed the defendant outside the victim's apartment at about 7:45 A.M. just before she left for work. The defendant told

Wendy he was going to another apartment near the victim's. Josephine Estevez, who lived directly below the victim's apartment, testified that about five minutes after she heard Wendy Hoehn go down the stairs, she heard cries and things being thrown around in the victim's apartment. The victim failed to report for work that morning, and failed to call in, as was her custom when she did not report. The light outside the victim's apartment was found unplugged the next morning by the landlord.

The defendant was questioned by the police on January 18, 1983. On January 25, he was arrested and later charged with murder in the first degree of Thea Pierce. The Commonwealth's case was circumstantial. Evidence was introduced that contradicted several of the defendant's statements to the police concerning his whereabouts on the morning of the crime. An F.B.I. expert in forensic science testified that two hairs found in the victim's apartment exhibited the same microscopic characteristics as the defendant's hair samples.[1]

The defendant introduced evidence that a married coworker of the victim had contracted herpes from her and that he had recently broken off their affair. The defendant also introduced evidence that placed this coworker outside the victim's apartment building on the morning of January 14. The coworker denied visiting the victim on that day, but testified that he did go to her apartment on January 17, entered through a door left ajar, and found her dead. He then removed his fingerprints from several objects, returned to work, and anonymously telephoned the police.

On September 26, 1983, the jury returned a verdict of guilty of murder in the second degree. The judge subsequently granted the defendant's motion for a new trial.

We summarize the facts relevant to the procedural questions raised by the Commonwealth. At the close of the Commonwealth's case, the judge reserved judgment on the defendant's

---

[1] The expert acknowledged that the comparison of hair samples did not constitute an absolute method of personal identification.

motion for a required finding of not guilty.[2] At the close of all of the evidence, the defendant renewed his motion, and the judge, pursuant to Mass. R. Crim. P. 25 (b) (1), 378 Mass. 896 (1979), reserved judgment and submitted the case to the jury. After the jury returned a guilty verdict of murder in the second degree and were discharged, the judge denied the defendant's renewed motion to set aside the verdict and for a required finding of not guilty. The defendant then moved for a new trial under Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). After a hearing a few days later, the judge allowed the motion for a new trial, "in accordance with Mass. R. Crim. P. 25 (b) (2)."

1. As a preliminary matter, we note that the Commonwealth's appeal was originally docketed in the Appeals Court. In *Commonwealth* v. *Friend*, 393 Mass. 310 (1984), we addressed the issue whether, under G. L. c. 278, § 28E, the appeal should have been docketed in this court. For the reasons cited in that case, we decide that this appeal properly was brought in the Appeals Court in the first instance.

2. The Commonwealth claims that the judge lacked the authority to order a new trial under rule 25 (b) (2) because under that rule the judge may not act sua sponte. We conclude that the judge's actions were proper.

Rule 25 (b) (2) states that "[i]f a verdict of guilty is returned, the judge may on motion set aside the verdict and order a new trial." The Commonwealth argues that because of this language a new trial may not be ordered sua sponte under rule 25 (b) (2). Even if we accept this interpretation of the rule, the Com-

---

[2] The Commonwealth correctly observes that Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979), requires that a motion made at the close of the Commonwealth's case must be ruled upon at that time. But see *Commonwealth* v. *Cote*, 15 Mass. App. Ct. 229, 239-242 (1983). Our review of the record, however, indicates that neither the Commonwealth nor the defendant objected when the judge reserved judgment. Furthermore, since the purpose of the rule is to protect "a *defendant's* right to insist that the Commonwealth present proof of every element of the crime with which he is charged before he decides whether to rest," we discern no prejudice to the *Commonwealth* by the judge's action (emphasis supplied). *Commonwealth* v. *Cote, supra* at 240.

monwealth does not prevail. The judge did not act sua sponte in this case, because the defendant had made a motion for a new trial, although under a different rule. The Reporters' Notes to rule 25 (b) (2) explain the policy underlying the requirement that the judge order a new trial only on the defendant's motion "since otherwise the subsequent proceeding would be subject to constitutional attack on double jeopardy grounds." Reporters' Notes to Mass. R. Crim. P. 25 (b), Mass. Ann. Laws, Rules of Criminal Procedure at 436 (1979). Clearly, this policy is not contravened when the defendant has moved for a new trial, albeit under a different rule. No other reason has been advanced by the Commonwealth for so restricting the judge's discretion.

3. The Commonwealth also claims that the judge erred by considering the defendant's rule 30 (b) motion under rule 25 (b) (2). We do not agree.

On September 26, 1983, the defendant filed a motion under rule 25 (b) (2) to set aside the jury verdict and enter a finding of not guilty, and a motion for a new trial under rule 30 (b). Normally, after the jury has been discharged, the defendant may renew his motion for a required finding of not guilty under rule 25 (b) (2) and "may include in the alternative a motion for a new trial." The judge then has three options favorable to the defendant: "(1) to set aside the verdict and order a new trial, (2) to order the entry of a finding of not guilty, or (3) to order the entry of a finding of guilty of any lesser [included] offense." *Commonwealth* v. *Keough*, 385 Mass. 314, 318 (1982).

In this case, the defendant's motion for a new trial, though denominated as a rule 30 (b) motion, could have been made at the same time under rule 25 (b) (2).[3] Nothing of consequence turns on this difference.[4] We have long held that pleadings are to

---

[3] Under Fed. R. Crim. P. 29, the counterpart to rule 25 (b) (2), a new trial may not be granted. Instead, all new trial motions are made pursuant to Fed. R. Crim. P. 33, similar to rule 30 (b).

[4] The Commonwealth argues that it is prejudiced by the judge's failure to make findings of fact in support of his decision to grant a new trial, a requirement of rule 30 (b) not found in rule 25 (b) (2). This court has not addressed the issue whether findings are required in response to all rule 30

be treated "according to their nature and substance" rather than their technical form. *Fabrizio* v. *U.S. Susuki Motor Corp.*, 362 Mass. 873 (1972). See *Kilroy* v. *O'Connor*, 324 Mass. 238, 239 (1949); *Menage* v. *Rosenthal*, 187 Mass. 470, 473-474 (1905).

The judge simply may have believed that a rule 30 motion was inappropriate at that particular stage of the proceeding. Rule 30, by its terms, addresses only "Postconviction Relief," and it is "intended that the remedy available under this subdivision [b] be truly post-conviction, that is, it is not open to a defendant until the validity of the finding or verdict of his guilt is conclusively established by an appellate court if an appeal is taken."[5] Reporters' Notes to Mass. R. Crim. P. 30 (b), Mass. Ann. Laws, Rules of Criminal Procedure at 484 (1979). While we do not find it necessary to decide when a "conviction" occurs for the purposes of rule 30 (b),[6] we do note that the present case does not present the circumstances typically dealt with under that rule. See *Commonwealth* v. *Pires*, 389 Mass. 657, 664-666 (1983) (newly-discovered evidence); *Commonwealth* v. *Westmoreland*, 388 Mass. 269, 271 (1983) (ineffective assistance of counsel); *Commonwealth* v.

(b) motions regardless of outcome, and we decline to address it in this case. Nevertheless, we do note that this court has upheld a judge's action under rule 30 (b) where no specific findings were made, but where the record as a whole supported the judge's conclusion. *Commonwealth* v. *Tirrell*, 382 Mass. 502, 510-511 n. 10 (1981). Cf. *Commonwealth* v. *Little*, 384 Mass. 262, 269 (1981) (where findings made, no reversal of decision on motion for new trial unless on review of the whole case manifest injustice would result); *Commonwealth* v. *Williams*, 378 Mass. 217, 224 n.4 (1979) (although judge should have made findings on motion to suppress, failure to do so not automatically reversible error).

[5] But see *Commonwealth* v. *Smith*, 384 Mass. 519, 524 (1981) ("defendant's appeal from his conviction should, when possible, be combined for review with his appeal from the denial of any motion for a new trial").

[6] This court has defined the time that a criminal "conviction" occurs differently for different purposes. For example, compare *Forcier* v. *Hopkins*, 329 Mass. 668, 670-671 (1953) (sentencing), with *Commonwealth* v. *Carr*, 373 Mass. 617, 626 (1977) (jury verdict). In *Commonwealth* v. *DeMarco*, 387 Mass. 481, 484-487 (1982), this court implied, but did not decide, that, for the purposes of rule 30 (b), conviction occurs at sentencing in the context of a motion based on the withdrawal of a guilty plea.

*Nickerson*, 388 Mass. 246, 249-250 (1983) (mental incompetency); *Commonwealth* v. *Collins*, 386 Mass. 1, 2 (1982) (prosecutorial misconduct); *Commonwealth* v. *Watson*, 377 Mass. 814, 815 (1979) (recanted testimony); *Commonwealth* v. *Ciminera*, 11 Mass. App. Ct. 101, 107-110, aff'd 384 Mass. 807 (1981) (jury misconduct). Instead, the defendant's motion in this case was based on the ground that the verdict was against the weight of the evidence,[7] a ground that is more closely within the intended scope of rule 25 (b) (2). We therefore conclude that in these circumstances the judge did not abuse his discretion in deciding the motion for a new trial on the basis of rule 25 (b) (2).

4. The Commonwealth also argues that the judge abused his discretion by granting the defendant's motion for a new trial. We note at the outset of our analysis that, as often stated in the past, the granting of a new trial is a decision firmly committed to the sound discretion of the trial judge. See *Commonwealth* v. *Little*, 384 Mass. 262, 268-269 (1981); *Commonwealth* v. *Cook*, 380 Mass. 314, 320 (1980); *Commonwealth* v. *Gagne*, 367 Mass. 519, 526 (1975). The trial judge has the advantage of firsthand evaluation of the witnesses and the evidence at trial. *Commonwealth* v. *Cinelli*, 389 Mass. 197, 205 (1983). He may be aware of nuances of conduct, tone, and evidence that easily escape the cold record available to an appellate court on review. See *Commonwealth* v. *Ellison*, 376 Mass. 1, 16-17 (1978). Furthermore, it is irrelevant what the Justices of this court would have done had they been in the position of the trial judge. Our task is only to ensure that there exists in the record before us evidence to support the judge's decision to order a new trial. *Commonwealth* v. *Cook, supra* at 320.

---

[7] The defendant argues in his brief that the trial judge should have allowed his motion for a required finding of not guilty. Since the record indicates no objection and no appeal on this issue by the defendant, we decline to address it, except to state that we find no substantial miscarriage of justice caused by the denial of the motion. See *Commonwealth* v. *Pisa*, 384 Mass. 362, 365-366 (1981).

With this standard in mind, we find no abuse of discretion by the judge. The evidence conclusively showed only that the defendant was in the vicinity of the victim's apartment about the alleged time of her death. Of course, "[t]his court has upheld convictions where the only proof of an essential element of the crime came through inferences." *Commonwealth* v. *Matchett*, 386 Mass. 492, 500 (1982). *Commonwealth* v. *Smith*, 368 Mass. 126, 128-129 (1975). Nevertheless, we conclude that the judge did not act "arbitrarily, frivolously, or contrary to law" in ordering a new trial. *Commonwealth* v. *Cook, supra* at 321. See *Commonwealth* v. *McCarthy*, 375 Mass. 409, 414-415 (1978).

We therefore find no abuse of discretion or error of law in the allowance of the defendant's motion for a new trial.[8]

> *Order setting aside verdict and granting*
> *motion for new trial affirmed.*

---

[8] Of course, the defendant may not be retried for murder in the first degree, since he was impliedly acquitted of that charge by the jury's second degree murder verdict. See *Green* v. *United States*, 355 U.S. 184 (1957).