COMMONWEALTH *vs.* CHARLES T. CORNISH.

No. 89-P-533.

Suffolk. October 10, 1989. - December 27, 1989.

Present: ARMSTRONG, CUTTER, & PERRETTA, JJ.

*Practice, Criminal,* New trial, Judicial discretion, Argument by prosecutor, Appeal by Commonwealth, Attorney's fees, Costs.

The judge in a criminal case did not abuse her discretion in allowing the defendant's motion for a new trial on the ground that, while the evidence was sufficient to support the verdict, the integrity of the evidence was such that she had doubts that the defendant had received a fair trial. [177-178]

This court concluded that an award to the defendant in a criminal case of his costs and reasonable attorney's fees was an appropriate exercise of its discretion under Mass.R.Crim.P. 30(c)(8)(B), in circumstances presented by the Commonwealth's appeal from the trial judge's granting the defendant's motion under Mass.R.Crim.P. 25(b)(2) for relief from the verdicts against him. [178-180]

INDICTMENTS found and returned in the Superior Court Department on August 14, 1987.

The cases were tried before *Elizabeth A. Porada*, J., and a motion for a new trial was heard by her.

*Lauren Inker*, Assistant District Attorney, for the Commonwealth.

*Herbert D. Lewis* for the defendant.

PERRETTA, J. After the jury returned verdicts of guilty on indictments charging the defendant with possession of marijuana and trafficking in cocaine,[1] the defendant brought a motion under Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), renewing his requests for a required finding of not

---

[1] The jury found the defendant not guilty on the indictment charging him with conspiracy to commit the crime of possession of cocaine with intent to distribute.

guilty and seeking, in the alternative, a new trial. At the hearing on the motion, the judge stated that there had been so many "problems" in the case that she had "felt" that, if the jury returned guilty verdicts and appropriate procedural steps were taken, she would "probably grant a new trial." The judge gave four reasons which led her to harbor grave doubts that the defendant had received a fair trial: (1) a serious question whether the Commonwealth's chief witness, a police officer, had committed perjury, a question which she requested be officially investigated; (2) an evidentiary ruling which the judge concluded she should not have made as it allowed the officer to opine as to the defendant's guilt; (3) the prosecutor's closing argument in which she asked the jury to draw an inference adverse to the defendant because he failed to call a witness, a codefendant whose trial had been severed from his; and (4) the inconsistent verdicts, which the judge did not question but viewed as indicative of confusion on the part of the jurors. On appeal from the grant of the motion, the Commonwealth claims an abuse of discretion. We affirm the order and allow the defendant's request for appellate costs and attorney's fees under Mass.R.Crim.P. 30(c)(8)(B), 378 Mass. 902 (1979).

1. *The Trial.*

It was the Commonwealth's position at trial, based upon the testimony of Boston police officer Trent W. Holland, that the defendant and one Rachel Hart were trafficking in cocaine outside the Station Cafe in Roxbury. Holland described how on April 14, 1987, he and his partner drove to the vicinity of the cafe and conducted a surveillance, with the aid of binoculars, from a Tremont Street bridge across from the Roxbury Crossing public transportation station. Holland stated that he and his partner were about 100 to 150 yards from the cafe. There was a field, and the subway stop, between the vantage point from the bridge and the cafe. The view was unobstructed because there were no buildings, only a trailer and some rolls of wire, in the field.

As he stood on the bridge looking across the field and watching the cafe, Holland related how he observed the de-

fendant standing by his vehicle parked in front of the cafe. Hart was sitting on the stoop of the front entrance. He saw that people would come up to and speak with the defendant, give him money, and he would nod towards Hart. The person and Hart would go into the cafe vestibule where the drugs were delivered.

After four people had approached the defendant, Holland and his partner got into their vehicle, drove to the cafe, and identified themselves to the defendant and Hart. She fled into the ladies' room of the cafe. After she was escorted from the ladies' room, it was searched and cocaine was found. A search of the defendant produced $395 and a plastic bag containing marijuana.

At the close of the Commonwealth's case and pursuant to the defendant's request, the judge announced that, after the lunch hour, the jury would be taken to the Station Cafe area for a view. Holland also went on the view. It became apparent on the view that there were buildings situated on the land that Holland had previously described as an empty field. Hence, a viewer could seriously question whether Holland in fact could see the Station Cafe from his vantage point on the bridge.

Upon returning to the courtroom, the prosecutor asked if the Commonwealth could reopen its case and recall Holland. The prosecutor explained that, although she could present Holland as a rebuttal witness after the defendant's case, that would most likely occur the next day, when Holland would be unavailable to testify in rebuttal.

Holland now explained to the jury that the buildings they saw were not there two years earlier on the date of the crime, April 14, 1987. Moreover, Holland volunteered a fact that he had never mentioned during his earlier testimony: when he made his observations, he was standing on stanchions that were about two and a half feet in height.[2] On cross-examination, Holland was asked to describe exactly how the field and

---

[2]Holland had testified at a probable cause hearing and before the grand jury without mention of the fact that he made his observations while standing on stanchions two and one-half feet in height.

surrounding area appeared on the day he arrested the defendant. He was also asked whether, during the lunch hour just prior to the view, he had gone to the location of the field and talked with anyone there present. Holland specifically denied having done any such thing and stated that he had spent the hour on the telephone inquiring about repair work being done on his automobile.

When trial resumed the next morning, the defendant went forward and presented the following evidence. A friend of the defendant's who had been attending his trial testified that, during the lunch break the day before, she had gone to the site in dispute. When she arrived, she saw Holland speaking with a man. Having been served with a subpoena early that very morning, that man next testified. He related that, in the early afternoon of the day before, a woman (the preceding witness) and a police officer had come to the yard of his place of employment within three minutes of each other. Both asked him the same question: how long had his business been at that location. The witness had been at that location since 1984, as had the "two permanent structures," a gray steel warehouse and a brown "prefabricated building." Two of the six portable trailers presently on the lot had been there since 1984. The witness described the officer with whom he had spoken as a "slightly built" black man.[3]

Testifying on his own behalf, the defendant related that on the day in question he had gone to the Station Cafe to cash his paycheck, as was his usual custom. After he cashed his check and left the cafe, he went outside where he ran into some men that he knew. They stood about talking for some ten minutes when two officers came over and asked everyone their names and purpose. They advised the defendant and his friends that it was a bad area and that they should stay away

---

[3]It should be remembered that Holland had represented the day before that he would be unavailable the next day. Consequently, he was not present when this witness testified. It did not escape the judge's notice, however, that, after the witness completed his testimony and left the courtroom, Holland reappeared.

from the "place." A woman that he did not know entered the cafe.

When the officers asked the defendant for identification, he produced his driver's license. They told him to empty his pockets and asked about the large amount of cash he had. The defendant explained that he had just cashed his check. When the woman who had earlier entered the cafe came out, the officers asked her where she had gone. When she answered that she had gone to the ladies' room, the second officer went into the cafe. He came back out a few moments later. The woman and the defendant were then arrested.

2. *The Motion for a New Trial.*

From our reading of the transcript, we conclude that the judge acted well within the limits of her discretion in granting a new trial. See *Commonwealth v. Cook*, 380 Mass. 314, 325 (1980); *Commonwealth v. Preston*, 393 Mass. 318, 324-325 (1984). The Commonwealth's argument that the verdict was not against the weight of the evidence misses the point. The judge recognized that the verdict was supported by the evidence. Her concerns, however, and the basis of her ruling relate to the integrity of that evidence, not its sufficiency.

As for Holland's opinion, given over the defendant's objection, that, based upon his observations from the bridge, he formed the opinion that "unlawful distribution of controlled substance was being made at that location, Class B," the Commonwealth's only argument is that "no change of circumstances had arisen to warrant a reversal" of the ruling admitting that testimony. The judge's statement that she was in error in allowing the testimony in the first instance is supported by the law. See *Commonwealth v. Hesketh*, 386 Mass. 153, 161-162 (1982), and cases and authorities therein cited.

We turn now to the prosecutor's closing argument in which she called for an inference adverse to the defendant with the following remark: "[T]here were other people that he could have called as witnesses here . . . . He's talked with Rachel Hart since then, and she clearly knows his problem, she shared in it." However, as the prosecutor well knew,

Hart's case had been severed from the defendant's under *Bruton* v. *United States*, 391 U.S. 123 (1968), and she was awaiting trial. Characterizing her remark as a "perceived impropriety," the prosecutor sought to justify it by her assessment of the defendant's credibility. She argued that Hart had made a statement to the police "which indicated that she had a relationship" with the defendant.[4] Therefore, the defendant's testimony that he did not know Hart "was a lie." We fail to see the logic of the argument, and we think the impropriety quite real rather than "perceived." It follows that we see no error or abuse of discretion in the judge's conclusion that, although she instructed the jury to disregard the remark, it was "highly prejudicial."[5] See *Commonwealth* v. *Gallego*, 27 Mass. App. Ct. 714, 720 (1989).

3. *Appellate Costs and Attorney's Fees.*

By motion presented prior to oral argument before us, the defendant requests an award of costs and attorney's fees arising out of the Commonwealth's appeal. As noted at the outset, the defendant's request for relief from the verdicts was brought under rule 25(b)(2). That rule makes no provision for such an award. Compare Mass.R.Crim.P. 15(d), 378 Mass. 884 (1979), and rule 30(c)(8)(B), *supra.* It has long been held, however, that "pleadings are to be treated 'according to their nature and substance' rather than their technical form. *Fabrizio* v. *U.S. Susuki Motor Corp.*, 362 Mass. 873 (1972). See *Kilroy* v. *O'Connor*, 324 Mass. 238, 239 (1949); *Menage* v. *Rosenthal*, 187 Mass. 470, 473-474 (1905)." *Commonwealth* v. *Preston*, 393 Mass. at 322-323.

As we have indicated, it is clear from the transcript of the hearing on the motion and the judge's detailed written expla-

---

[4]At the hearing on the motion, the prosecutor did not refute defense counsel's statement that Hart's alleged statement implicating the defendant does not appear in any police report and that it was attributed to Hart for the first time at the defendant's probable cause hearing.

[5]On appeal, the Commonwealth does not argue that the remark was a proper one. Rather, the claim is the only one that can be made, that the curative instruction was sufficient. We think it appropriate to point out that appellate counsel neither tried the case nor filed the notice of appeal for the Commonwealth.

nation of her ruling that she did not view the verdicts as against the weight of the evidence. In granting the defendant a new trial, the judge spoke in terms of the trustworthiness of the evidence, fairness, and the interests of justice. These reasons for granting the motion are those that fall more within the scope and comprehension of rule 30(b), 378 Mass. 900 (1979), than of rule 25(b)(2). See *Commonwealth* v. *Preston*, 393 Mass. at 323-324. We, therefore, treat the motion as if brought under rule 30(b).

Rule 30(c)(8)(B) reads, in pertinent part: "An appeal from a final order under this rule may be taken to the Appeals Court by either party. If an appeal is taken: . . . Upon written motion supported by affidavit the Appeals Court *may* determine and approve payment to the defendant of his costs of appeal together with reasonable attorney's fees, to be paid on the order of the trial court after entry of the rescript" (emphasis supplied). Whether we approve the request made by motion with supporting affidavits, all in conformity with the requirements of the rule, is a matter within our discretion. See Smith, Criminal Practice and Procedure § 2093 n.1 (2d ed. 1983).

On the circumstances here presented, we conclude that an award to the defendant of his costs and reasonable attorney's fees is an appropriate exercise of our discretion. The circumstances upon which our conclusion rests are: the grounds upon which the order granting the new trial were based, specifically Holland's testimony and the prosecutor's closing argument; the Commonwealth's failure to assess realistically its probability of success on appeal; the Commonwealth's failure to prosecute the appeal diligently; the defendant's unrefuted assertion that, while this appeal was pending, Hart's case "was filed without a change of plea"; and the fact that the defendant will have additional costs and fees upon any retrial that might occur.

We do not question the Commonwealth's right to exercise its prosecutorial discretion. In view of the above circumstances, however, we think this is an appropriate (even if rare) occasion for the exercise of our discretion to authorize

the award, albeit not in the amount sought. Accordingly, payment to the defendant is approved in the full amount of his costs and attorney's fees in the amount of $3,500.

*Order granting the motion for a
new trial affirmed.*