Garsh, J.
On March 14,1996, a Suffolk County jury found defendant, Reylando Reyes (“Reyes”), guilty of unlawful distribution of a class B controlled substance and unlawful distribution of a class B controlled substance within a school zone. Immediately after the verdict was rendered, following a jury-waived trial, the court found Reyes guilty of a second and subsequent distribution offense. Reyes now moves for a required finding of not guilty or, in the alternative, for a new trial, pursuant to Mass.R.Crim.P. 25(b)(2) and G.L.c. 278, §11.
For the following reasons, defendant’s motion for a required finding of not guilty is DENIED and defendant’s motion for new trial is ALLOWED.
FACTUAL BACKGROUND
Three witnesses, all police officers, testified for the Commonwealth on March 14,1996. The defendant did not testify, and no witnesses testified on his behalf. Before the trial, the Commonwealth did not disclose to Reyes that the alleged buyer of the cocaine Reyes was charged with distributing had made an oral statement to the police within a few moments of the alleged distribution directly implicating Reyes.
In his opening statement, defense counsel stated that the case “will be filled with questions.” He stressed that there would no evidence that Reyes had any drugs on him before he went into the car and that the only drugs discovered were taken from the driver of the car.
Boston Police Officer Garvey testified that from his vantage point, over forty feet away from the intersection of Harvard and Bernard Streets, he observed Reyes walk from Kingsdale Street to Bernard Street. Several minutes later, a vehicle stopped abruptly in front of the defendant. Reyes and the driver spoke for a few seconds through the passenger’s window. Then the defendant entered the front passenger’s seat, and Garvey observed them speaking for another ten to fifteen seconds after which Reyes left the vehicle, putting U.S. currency into his pants pocket. The vehicle departed. Garvey could not observe the amount of currency Reyes put in his pocket, nor did he observe money going from the driver to Reyes. He also did not see any object going from Reyes to the driver. No other material observations were made of the defendant by Garvey. Reyes was not arrested that evening.
After making his observations, Garvey radioed Detectives Kevin Waggettt (“Waggettt”) and Paul Murphy (“Murphy”),[1] who proceeded to follow the vehicle into which Reyes had entered and speak with the driver. The driver was identified as a Mr. White (“White”). Waggettt testified that the driver was not arrested, but that he had obtained information about White for the purpose of summonsing him. The following exchange occurred during Waggettt’s direct examination:
Q. And after you identified yourself [to the driver], what happened? Or, what else — what exactly did you say to him?
A. We approached him, and told him what our purpose was, that we believe he just bought drugs over at the area of Harvard and Bernard Street.
*155 Q. And what did he do in response to this statement?
A. He acknowledged that he had.[2] And we asked him did he have them on him or the drugs in your car, and he said they were in the car . . .
A. I looked inside and I observed that the drugs were on the floorboard under where the driver would sit.
Q. Were they in plain view?
A. They were right on the floor, yes, sir.
Q. So you stopped Mr. White and you told him that you were police officers and you told him what you thought had happened and he acknowledged that?[3]
A. Yes, sir.
[Defense Counsel]: Objection.
At side bar, defense counsel argued that the driver’s acknowledgment that he had “just” purchased drugs at the area of Harvard and Bernard Streets was inadmissible hearsay because it was an out-of-court statement offered for the truth of the matter asserted therein. The prosecutor countered that the statement was admissible as a statement against penal interest. Defense counsel responded by stating that White is “not on trial” and that “it would have to come in as some allegation that there was independent proof of a conspiracy between the two.” He agreed that there is a hearsay exception for an admission against penal interest, saying “that’s what it would be.” Defense counsel did not challenge its admission on the grounds that the Commonwealth had not demonstrated that White was unavailable to testify. Because an essential prerequisite for admission of hearsay under the exception for a statement against penal interest is that the declarant be unavailable to testify, the court assumed that the prosecutor, as an officer of the court, implicitly was making that representation when he maintained that the powerfully incriminating statement fell within a recognized exception to the hearsay rule.
On cross-examination, defense counsel did not deal with the hearsay. He did not, for example, inquire as to whether the police report the witness authored had made any mention of a statement made by White to the detective. If he had so inquired, the answer would have been “no.”
There was a recess at the conclusion of Waggettt’s testimony during which the court, sua sponte, sought confirmation from the prosecutor that White was, indeed, unavailable. When queried, the prosecutor admitted that he did not know whether White was unavailable. He stated that the police report contained an address for White but that “nobody has gone to that address.” The prosecutor explained that he did not know that the hearsay statement was going to come up and, in fact, had no knowledge of the incriminating statement before Waggettt testified in court about its having been made. Because he had been surprised, the prosecutor requested and was granted leave for a summons for White and a short time to attempt to locate him.
Murphy, the Commonwealth’s final witness, then testified. He told the jury that when he and Waggettt were talking with the driver,[4] another police officer told him that the driver was his neighbor. Murphy also testified as an expert as to the typical way in which cocaine is sold by street level dealers.
After Murphy finished testifying, the prosecutor conceded that he could not say that White was unavailable and that the Commonwealth had not been able to satisfy “the specific minimums of unavailability.” Accordingly, the court instructed the jury that Waggettt’s testimony about what statements were made to him by the driver of vehicle was being struck and that the jurors must disregard such testimony and not consider it in any way in their deliberations. Defense counsel did not move for a mistrial on the theory that, given the damaging nature of the excluded hearsay, there was a strong likelihood that the jury’s deliberations were tainted by the excluded evidence.
In his closing argument, defense counsel argued that the circumstantial evidence gave rise to numerous reasonable inferences, each consistent with innocence. Stressing that no one had seen money being passed back and forth, he suggested that “it’s just as reasonable that my client might have taken that money out of his pocket when he was sitting in that car and handed some money to that driver.” Suggesting an inference as to why Reyes entered and exited the car, defense counsel stated: “Well, maybe it wasn’t a drug deal. Maybe it’s just Rey Reyes standing on the corner seeing a fellow he knows in a car and getting in and getting out of it.” Focusing on the cocaine found in the car, defense counsel asked the jury to draw an inference that the drugs were in the car in the possession of the driver before he ever encountered the defendant. “There’s no proof,” he reminded the jurors, “that that crack got into that car out of the hands of my client.”
The defendant moved for the entry of a required finding of not guilty at the close of the Commonwealth’s case. That motion was denied. The defendant presented a similar motion at the close of all the evidence, and that motion, too, was denied. The jury returned a guilty verdict on both indictments, following which the defendant renewed his motion for a required finding of not guilty and moved, in the alternative, for a new trial.
DISCUSSION
Rule 25(b)(2) permits a defendant to renew his motion for a required finding of not guilty within five days after the jury has been discharged. In ruling upon that motion, the court looks only to the legal sufficiency of the evidence and may not weigh the evidence or assess the credibility of the witnesses. Common *156 wealth v. Torres, 24 Mass.App.Ct. 317, 324 (1987). It is the same test that governs a Rule 25(a) motion for a required finding of not guilty made at the completion of the evidence. The evidence is assessed in the light most favorable to the Commonwealth, and the motion is granted only if the evidence is insufficient, as a matter of law, to sustain a conviction on the charge. See Rule 25(a); Commonwealth v. Latimore, 378 Mass. 671, 676-77 (1979).
The defendant is entitled to a finding of not guilty if the evidence and the inferences permitted to be drawn therefrom are not “of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.” Id. at 677, quoting Commonwealth v. Cooper, 264 Mass. 368, 373 (1928). Here, although there was no direct evidence of cocaine being passed from Reyes to White, the observations made by Garvey, coupled with the cocaine found in the vehicle moments later and Murphy’s expert testimony concerning street level distribution of cocaine, are enough to permit the jury to infer the existence of the essential elements of the crimes charged.
Rule 25(b)(2) also permits a motion for a new trial to be presented with the renewed motion for a required finding of not guilty. A new trial may be granted if the verdict is against the weight of the evidence or if the integrity of the verdict is “suspect.” Commonwealth v. Doucette, 408 Mass. 454, 455-56 (1990). See also Commonwealth v. Cornish, 28 Mass.App.Ct. 173, 177 (1989) (despite the fact that curative instructions were given, trial court was concerned with integrity of evidence where the prosecutor improperly referred to the defendant’s failure to call a witness; in addition, a police officer was incorrectly allowed to testify as to the defendant’s guilt and there was a serious question as to whether the Commonwealth’s chief witness, a police officer, had committed perjury).[5]
This court exercises discretion to grant Reyes a new trial. The Commonwealth’s evidence was weak and based entirely on inferences. The integrity of the verdict is suspect because it is probable that, in the context of this very short trial, members of the jury were unable to wipe from their minds the highly prejudicial hearsay directly implicating Reyes. After having heard White’s acknowledgment that he had just purchased the cocaine found in the car on the corner of Harvard and Bernard Streets, jurors were unlikely to bring themselves to draw rational inferences consistent with innocence, such as that the cocaine was purchased by White earlier in the day, that Reyes was a buyer and not a seller, that Reyes had borrowed money from White, or that Reyes was collecting money owed to him by White. The powerfully incriminating hearsay effectively deprived Reyes of a meaningful chance to have the jury view the evidence as reasonably permitting either of two conclusions, one of innocence and the other of guilt.
The jury never should have heard what White allegedly said when confronted by the police.[6] White’s acknowledgment was an out-of-court statement being offered for the truth that White had just purchased cocaine from the area of Harvard and Bernard Streets. “A statement is admissible under the penal interest exception if the declarant’s testimony is unavailable, the statement so far tends to subject the declarant to criminal liability that a reasonable person in his position would not have made the statement unless he believed it to be true, and the statement, if offered to exculpate the accused, is corroborated by circumstances clearly indicating its trustworthiness.” Commonwealth v. Pope, 397 Mass. 275, 279 (1986).[7] See Proposed Mass. R. Evid. 804(b)(3). “The ‘unavailability’ of a witness may be established by ... an inability to locate the witness after due and diligent search.” Liacos, Handbook of Massachusetts Evidence 447 (6th ed. 1994), citing Commonwealth v. Clark, 363 Mass. 467 (1973). The Commonwealth ultimately conceded that it had not made a due and diligent search and that, thus, the test for admissibility had not been met.
Curative instructions are insufficient where, as here, the evidence “is so close to the ultimate issue at hand that there is a greater danger that the jury will misuse the statement.”[8] Commonwealth v. Errington, 14 Mass.App.Ct. 733, 739 (1982), quoting United States v. Brown, 409 F.2d 758, 776 (D.C. Cir. 1974), rev’d, 390 Mass. 875 (1984) (reversed on grounds hearsay testimony was admissible under an exception to the hearsay rule). See, e.g., Bruton v. United States, 391 U.S. 123 (1968) (curative instructions not adequate to protect defendant’s rights where judge instructed jury that codefendant’s confession was inadmissible against defendant and had to be disregarded in determining his guilt). This case falls squarely into the Bruton category of situations in which the withdrawn evidence is so damaging that nothing but a new trial will remedy the error.
The fact that the prosecutor may not have known that powerfully incriminating evidence was in the possession of the police does not render the integrity of the verdict any less suspect. Indeed, the fact that White’s acknowledgment appears in no police report and that the Assistant District Attorney learned nothing about it prior to its being revealed at trial raises questions about Waggett’s credibility, and, therefore, creates more, not less, suspicions about the trustworthiness and integrity of the evidence, fairness, and the interests of justice.
ORDER
Accordingly, defendant’s Motion for a Required Finding of Not Guilty is DENIED and defendant’s Motion for a New Trial is ALLOWED.

No objection or motion to strike was made when Garvey testified as to what he radioed his fellow officers. The court reminded the jurors that they, not Garvey, were the finders of fact. No objection was made when Garvey was asked how many arrests “for this type of street level distribution” he had *157 made.

Defense counsel did not move to strike. At a subsequent side bar conference, it became apparent that defense counsel was not aware that this testimony had been given.

Defense counsel did not object.

The court instructed the prosecutor not to elicit any statement from Muiphy as to what, if anything, Murphy had heard White say.

See also Mass.R.Crim.P. 30(b) (trial judge has discretion to grant motion for new trial “if it appears that justice may not have been done”). When the reasons for granting a motion for new trial fall more within the scope of rule 30(b) than of rule 25(b)(2), the motion may be treated as if brought under rule 30(b). Commonwealth v. Cornish, 28 Mass.App.Ct. at 179. To the extent rule 25(b)(2) does not grant discretion to order a new trial on the circumstances of this case, rule 30(b) clearly would.

The out-of-court statement was not admissible against Reyes as a statement of a coconspirator or joint criminal venturer because there was no showing it'was made during the pendency of the criminal enterprise and in furtherance of it. See, e.g., Commonwealth v. White, 370 Mass. 703, 708-09 (1976). That rule applies even where a conspiracy or joint enterprise has not been charged. Commonwealth v. Drew, 397 Mass. 65, 71 (1986); Commonwealth v. Flynn, 362 Mass. 455, 477 (1972).

It has yet been decided whether the government must satisfy the same standard of clear corroboration when it introduces an inculpatory statement against penal interest as must the defendant before introducing an exculpatory statement against penal interest. Commonwealthv. Pope, 397 Mass. at 280.

The delay between the time the hearsay statement was heard and the time curative instructions were given compounds the prejudice to the defendant. See, e.g., Commonwealth v. Crehan, 345 Mass. 609, 613-15 (1963).